FARMERS' ELECTRIC COOPERATIVE, INC., Respondent,

v.

MISSOURI DEPARTMENT OF CORRECTIONS, Appellant.

No. SC 83633.

Supreme Court of Missouri, En Banc.

Nov. 20, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., James R. Layton, State Solicitor, Jefferson City, for Appellant.

Victor S. Scott, Jefferson City, for Respondent.

RONNIE L. WHITE, Judge.

Missouri Department of Corrections (MDC) appeals the trial court judgment awarding Farmers' Electric Cooperative, Inc. (Farmers') $3,154,296 in damages for breach of contract. MDC contends the trial court erred in its application of the measure of damages by permitting recovery beyond the term of the contract. The judgment is reversed, and the case remanded for proceedings consistent with this opinion.

## I.

In 1986, the parties entered a twenty-year contract for Farmers' to supply, at a special rate, all of the electrical needs for the MDC on its property in DeKalb County. The terms of the contract were to commence upon the initial billing for services provided to the existing facility located on this property, the Western Missouri Correctional Center (WMCC). The contract's origination in conjunction with the billing for services occurred in 1988. In 1994, the MDC obtained a voluntary annexation of the DeKalb County property into the City of Cameron (Cameron). Subsequent to this annexation, the MDC constructed a second facility on this same tract of land, Crossroads Correctional Center (Crossroads), which began operations in 1997.

MDC purchased electrical services for Crossroads from Cameron. In *Farmers' Elec. Coop., Inc. v. Missouri Dep't. of Corr. (Farmers' I)*[1], this Court determined that while Cameron was the lawful supplier of electricity for Crossroads, MDC's voluntary annexation breached the implied covenant of good faith and fair dealing in its contract with Farmers'.[2] The Court remanded to the trial court directing it to enter judgment in favor of Farmers' with regard to the breach of contract claim and make a determination of damages.[3] On remand, the trial court awarded damages of $1,518,110 for the actual contract period and an additional $1,636,186 for predicted future damages of

1. 977 S.W.2d 266 (Mo. banc 1998).

2. *Id.* at 272.

3. *Id.*

lost profits totaling $3,154,296. MDC contests the additional damages for projected lost profits.

## II.

The trial court's judgment in a court-tried case may be reversed when it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law.[4] The evidence, and permissible inferences therefrom, are viewed in the light most favorable to the judgment disregarding all contrary evidence and inferences.[5]

MDC contends the damage award calculations must be curtailed in the year of 2008, the year the twenty-year contract expires, and that Farmers' failed to present evidence of additional lost profits that would have occurred as a direct and natural consequence of the breach by a reasonable certainty. Farmers' claims that despite the terms of the contract, but for the breach, it would have maintained exclusive rights to provide electrical services to Crossroads after 2008 pursuant to section 394.315.[6] Farmers' also asserts that expert testimony extrapolating future profits based upon current usage at Crossroads, past usage at WMCC, and the projected fifty-year operational life of the correctional facility (1997–2046) substantiated the additional damage award.

Lost profits related to a breach preventing performance are recoverable provided the loss is the natural and proximate result of the breach, is ascertainable with reasonable certainty, is not speculative or conjectural, and was within the contemplation of the parties when the contract was made.[7] Farmers' claims for damages beyond the life of the twenty-year contract are too speculative to satisfy this standard.

Farmers' did not show that but for the breach it would have had exclusive rights to provide Crossroads' electrical services for the full operational life of the facility. While section 394.315.2 allows an electric cooperative to continue serving existing structures, Crossroads was constructed after the voluntary annexation, and it cannot even be presumed that MDC would have constructed Crossroads without having received the annexation. Even if the annexation and breach had occurred after the construction of Crossroads, service to existing structures can be terminated after any municipal annexation pursuant to the criteria outlined in sections 386.800, and 394.080. Moreover, the legislature may amend its granting of service provision rights to rural cooperatives, municipalities, or public utilities at any time. Farmers' alleged exclusive rights were not established with reasonable certainty.

## III.

The trial court's judgment awarding damages beyond the twenty-year term of

---

**4.** *Burkholder ex rel. Burkholder v. Burkholder,* 48 S.W.3d 596, 597 (Mo. banc 2001). See also Rule 84.13(d).

**5.** *Id.*

**6.** Section 394.315.2 states in pertinent part: "Once a rural electric cooperative, or its predecessor in interest, lawfully commences supplying retail electric energy to a structure through permanent service facilities, it shall have the right to continue serving such structure, and other suppliers of electrical energy shall not have the right to provide service to the structure except as might be otherwise permitted in the context of municipal annexation, pursuant to section 386.800, RSMo, and section 394.080, or pursuant to a territorial agreement approved under section 394.312."

**7.** *Harvey v. Timber Resources, Inc.,* 37 S.W.3d 814, 818 (Mo.App.2001). See also *Anuhco, Inc. v. Westinghouse Credit Corp.,* 883 S.W.2d 910, 923 (Mo.App.1994).

the contract is not supported by substantial evidence. The judgment is reversed, and the case remanded for proceedings consistent with this opinion.

All concur.