# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2054

_____

| | | |
|---|---|---|
| Moses.com Securities, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Comprehensive Software Systems, Inc.; | * | Eastern District of Missouri. |
| William W. Simpson; Southwest | * | |
| Securities, Inc.; David Glatstein; | * | |
| David Zeleniak, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: February 14, 2005
Filed: May 11, 2005

_____

Before WOLLMAN, McMILLIAN, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Moses.com (Moses) appeals from the district court's[1] order denying a new trial and its judgment in favor of defendant Comprehensive Software Systems, Inc. (CSS), claiming that it was prejudiced by the exclusion of evidence at trial. Moses also appeals from the district court's dismissal of Moses's claims against defendants

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

Southwest Securities, Inc. (Southwest), and David Glatstein and its refusal to grant Moses leave to file a third amended complaint. We affirm.

**I.**

Moses planned to initiate a new business model as an online stock brokerage firm that would charge a monthly subscription fee to customers instead of a fee for each transaction. It began searching for a software company that could provide software with automated front- and back-office capabilities for stock trades that would comply with Securities and Exchange Commission and National Association of Security Dealers regulations. It began to work with CSS in 1999, and hired IMIS, Mastech, Inc., a technology consulting firm, to test and evaluate the CSS software system in light of Moses's needs. Mastech tested the system in May 1999 and produced for Moses a report—called a "gap analysis"—that highlighted the system's strengths and limitations, noting that several aspects of the back-office capabilities were still under development. After Mastech finished its testing, Moses and CSS executives met on June 2, 1999, to discuss goals and a potential time frame for the installation and initiation of the CSS system at Moses's facilities. The parties disagree over whether they agreed upon a particular time frame at the June 2 meeting.

Although Moses and CSS did not sign a formal contract, they negotiated a letter of intent to work together in establishing an appropriate software system for Moses's needs. Moses sought investors and initiated a costly marketing strategy that included advertising during the 2000 Super Bowl. Moses executives became dissatisfied with CSS's work, frustrated by the slow progress in providing the capabilities and functionality in the system that Moses expected. Moses claimed that CSS had represented that the system was already complete and functional at the June 2 meeting, and it expected a faster conversion.

Moses subsequently concluded that the CSS system did not work and asked CSS to leave its premises in February 2000. It filed suit in Missouri state court,

raising state tort claims for fraudulent misrepresentation, negligent misrepresentation and negligence. CSS removed the case to federal court and moved to compel arbitration. The district court denied CSS's motion to compel arbitration, a ruling that we affirmed on appeal. Moses.com v. Comprehensive Software Systems, Inc., 263 F.3d 783 (8th Cir. 2001). Moses filed an amended complaint, adding several claims and additional defendants, including Southwest and Glatstein. After the district court found that Moses's allegations of conspiracy were too indefinite to resolve various motions to dismiss that had been raised, D. Ct. Order of Oct. 8, 2002, Moses filed a second amended complaint. When Southwest and Glatstein again filed a motion to dismiss, the district court dismissed the claims against them without prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. D. Ct. Order of Feb. 6, 2003. Moses moved to file a third amended complaint, adding more defendants and repleading the claims against Southwest and Glatstein. The district court denied leave to file the amended complaint. The remaining parties continued with discovery, during which the district court consistently denied Moses's discovery requests, which were designed to reveal the status and functionality of CSS software at Southwest and Scottsdale Securities, Inc. (Scottsdale), two companies that had also hired CSS to provide software for securities transactions.

The claims against CSS ultimately proceeded to a jury trial. During trial, the district court prohibited any discussion of Southwest and its relationship with CSS or its experience with CSS software. The district court submitted all the claims to the jury except the promissory estoppel claim. The jury returned a verdict for CSS on each of Moses's claims and also awarded $33,000 to CSS on its counterclaim seeking damages for unpaid work in *quantum meruit*. Moses filed a motion for a new trial—claiming prejudice in light of all the excluded evidence—which the district court denied.

-3-

## II.

As stated earlier, Moses appeals from the judgment in favor of CSS and from the denial of its motion for a new trial, alleging numerous errors that it claims resulted in prejudice. "A trial court must determine whether an evidentiary ruling was so prejudicial as to require a new trial which would be likely to produce a different result." O'Dell v. Hercules, Inc., 904 F.2d 1194, 1200 (8th Cir. 1990). We review a district court's denial of a motion for a new trial for abuse of discretion, giving great deference to the district court's ruling. Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 867 (8th Cir. 2004).

A party objecting to evidentiary rulings must specifically identify the alleged erroneous ruling and the improperly excluded evidence. Watson v. O'Neill, 365 F.3d 609, 614-15 (8th Cir. 2004). We accord substantial deference to the district court's evidentiary rulings made at trial, and will reverse only if they amount to "a clear and prejudicial abuse of discretion." Lovett ex rel. Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1081 (8th Cir. 2000). Offers of proof are important to establish the purported relevance of the excluded evidence. See Watson, 365 F.3d at 616.

## A.

Moses first argues that the district court improperly excluded during trial much of its evidence relating to CSS's misrepresentations. Having granted CSS's "motion in limine to exclude reference, argument, and discussion of the installations and/or conversions that CSS was involved with at or about the similar time frames" at Southwest and Scottsdale, the district court heard and rejected numerous offers of proof by Moses as the trial proceeded, finding that such evidence was irrelevant and would serve only to distract the jury from the key issues. Moses asserts that several pieces of excluded evidence would have provided substantial support for its claims of intentional misrepresentation and concealment. In particular, it argues that the evidence that CSS made statements at the June 2, 1999, meeting and in subsequent conversations that its system worked at Southwest constituted the heart of the

-4-

misrepresentation claim. Moses also argues that the evidence that Southwest's and Scottsdale's CSS back-office systems were not functioning properly was central to its ability to prove both that it was CSS's software and not Moses's mismanagement that caused the problems, and that CSS had prior knowledge of the problems within its system that it failed to communicate to Moses.

We conclude that the district court did not abuse its discretion by excluding the proffered evidence. It was reasonable for the district court to conclude that evidence involving two non-party companies could confuse the jury and was not probative of the central issues in the case, particularly when Moses had failed to establish an adequate basis for its assumptions that the other companies' systems were virtually identical to Moses's system. Without a showing that the systems were virtually identical, that the excluded statements included definitive promises, or that CSS was intentionally concealing the state of its software from Moses, the status of the CSS systems of other CSS clients is not clearly relevant.

The exclusion of the evidence was also not clearly prejudicial because there was substantial testimony about the communications between CSS and Moses regarding the particular system that CSS was installing for Moses. We cannot say that further evidence of statements by CSS referencing its work elsewhere would likely have produced a different outcome in the case. See O'Dell, 904 F.2d at 1200. Moses's chief executive officer, Jim Winkelmann, testified that he informed CSS of his desired timetables for public launch of his new business model at the June 2 meeting and that CSS told him that that would not be a problem. He testified that he understood CSS's assurance as a promise. In an offer of proof, Winkelmann further testified that he was told that the system worked at Southwest, and that he assumed based on that representation that the system was fully functioning. The statement about Southwest's system was neither clearly a promise nor an intended inducement, and it would have been unreasonable for Winkelmann to rely on it in light of the gap analysis report that stated that CSS's system was not complete and still had modules

under development, a report that Winkelmann had already received at the time he made the decision to work with CSS.[2]  Accordingly, the district court did not abuse its discretion in excluding the proffered testimony that CSS had described its work with the system at Southwest as successful.  Likewise, we conclude that the offers of proof by Moses's remaining witnesses were of similarly limited probative force, and thus we find that the rulings excluding the proffered testimony did not result in prejudice sufficient to warrant reversal.

**B.**

Moses next asserts that the district court erred in granting CSS's motion to quash Moses's discovery request for information about Southwest and Scottsdale, contending that it was thereby prevented from discovering relevant evidence.

We review a district court's discovery rulings for abuse of discretion.  Moran v. Clarke, 296 F.3d 638, 650 (8th Cir. 2002) (en banc).  Our review is "both narrow and deferential," and we will grant a new trial "only where the errors 'amount to a gross abuse of discretion resulting in fundamental unfairness.'"  Id. (quoting Bunting v. SeaRay, Inc., 99 F.3d 887, 890 (8th Cir. 1996).  In general, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things . . . ."  Fed. R. Civ. P. 26(b)(1).  The district court may limit discovery if it "is unreasonably cumulative or

---

[2]The first page of Mastech's gap analysis stated that "the CSS system provides a scalable front- and back-office system, but much of the back-office system is under development."  Appellant's App. 518.  The report also noted that the back-office functions may require significant design work and that "there does not appear to be a firm schedule for completion."  Id. at 519.  The report went on to discuss strengths and weaknesses of the various modules and concluded that the "technology will probably lead to a successful system," as long as settlements and margin processing work properly. Id. at 535.  It identified expected completion dates for the various tested modules ranging from 3 to 18 months.

duplicative," the party has already "had ample opportunity by discovery" to obtain the materials, or the burden outweighs the likely benefit of the discovery. Fed. R. Civ. P. 26(b)(2).

Moses listed several items that the district court barred from discovery and stated that it was prejudiced by the limitation. It did not, however, specify the way in which the various protective orders and discovery denials resulted in fundamental unfairness. Most of the discovery requests at issue would have involved depositions of and document production by Scottsdale executives and employees. Although the district court did not set forth its reasoning in ruling on the discovery requests, the record does not support a finding that an abuse of discretion occurred, nor does it establish that Moses suffered prejudice as a result of the rulings.

## C.

Moses also claims that the district court committed error when it refused Moses's proffered jury instructions. In reviewing alleged errors in jury instructions, we ask "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Children's Broad. Corp., 357 F.3d at 867 (quotation omitted). The district court must instruct the jury on the plaintiff's claims and theories if the theories of law are "legally correct, supported by the evidence, and brought to the court's attention in a timely request," but "is not bound to give the party's requested instruction." Board of Water Works Trustees v. Alvord, Burdick & Howson, 706 F.2d 820, 823 (8th Cir. 1983). In diversity cases such as this one, "state law controls the substantive content of the instructions that are given." Hoselton v. Metz Baking Co., 48 F.3d 1056, 1062 n.9 (8th Cir. 1995).

Moses first asserts that the district court erred when it refused to give an instruction on Moses's promissory estoppel claim, resulting in judgment as a matter of law for CSS on that claim. We will sustain the district court's decision not to give

an instruction if the instruction is unsupported by the evidence. Id. at 1063. Promissory estoppel, a type of equitable estoppel under Missouri law, involves the following elements: (1) a promise that is inconsistent with later actions by the party making that promise; (2) detrimental reliance on the promise; (3) the promisor should have or did foresee the reliance, and (4) injustice can be avoided only by enforcement of the promise. Resnik v. Blue Cross & Blue Shield, 912 S.W.2d 567, 573 (Mo. Ct. App. 1995). Promissory estoppel is to be used "only in extreme cases to avoid unjust results," Geisinger v. A & B Farms, Inc., 820 S.W.2d 96, 98 (Mo. Ct. App. 1991), but the jury should be allowed to consider a promissory estoppel claim if the plaintiff "can point to evidence which, if believed, would permit a judge or jury to find each of these elements." Midwest Energy, Inc. v. Orion Food Sys., Inc., 14 S.W.3d 154, 159 (Mo. Ct. App. 2000).

We agree with the district court that the record contains no evidence that CSS promised at the June 2, 1999, meeting to have the system completed by a particular deadline and that no reasonable jury could find that such a promise had been made. Moses asserts that Winkelmann's mentioning of dates for a desired launch and the CSS representatives' response that there would be no problems amounted to a promise. Moses also claims that the fact that actions to begin the implementation of the software were taken immediately following the meeting supports the idea that there was a mutually understood promise. Even taking everything Moses claims as true, the evidence does not support a claim for promissory estoppel because Moses cannot show the existence of a specific promise, the first element of the claim. The general statement that there would not be a problem is much too general to constitute a binding promise for either the time frame or the system's capabilities.

Moses next asserts that the district court erred in refusing its proffered version of the instructions with respect to the claims that were submitted to the jury. Moses argues that, because the instructions it submitted correctly stated the law, they should have been accepted. The district court has broad discretion, however, to determine

the form of the jury instructions, and we will reverse "only if the error affected the substantive rights of the parties." Gasper v. Wal-Mart Stores, Inc., 270 F.3d 1196, 1200 (8th Cir. 2001). The relevant question is therefore whether the instructions submitted adequately stated the elements of the tort claims at issue. Moses has failed to allege any legal errors in the given instructions, simply asserting that the instructions did not fully describe the alleged misrepresentations of CSS.

We agree that the proposed instructions E, F, and I, for fraudulent misrepresentation and negligent misrepresentation, differed from submitted instructions 6, 7, and 8 in the manner in which they framed the scope of the alleged misrepresentations. The submitted instructions focused on whether the statement "it worked"—when spoken in response to Moses' inquiry about "whether the CSS system was sufficient for Moses to trade and process CNS eligible securities for cash and account for the trades on a settlement date basis"—was intended to cause Moses to "rely upon such representation in deciding to implement the CSS system." Appellee CSS's App. 80-82. In contrast, Moses's requested instructions focused on whether CSS "represented to [Winkelmann] that the CSS system had sufficient functionality for Moses to operate as a self clearing broker dealer trading CNS eligible securities for cash, intending that Moses rely upon such representation . . ." Appellant's App. 1029-30.

The district court acted within its discretion when it formulated the instructions in such a way as to tie specific testimony at trial to potential conclusions instead of using the conclusory statements in Moses's instructions. The instructions for the misrepresentation claims correctly stated the tort elements under Missouri law, did not imply factual conclusions for the jury, and did not prevent the jury from considering the full context of the facts the instructions mentioned. The court's instructions for fraudulent omission and negligent omission also correctly stated the law, elaborating the factual findings necessary to find for the plaintiff. Accordingly,

we conclude that the district court did not abuse its broad discretion to frame appropriate jury instructions.

## III.
### A.

Moses additionally appeals from the district court's grant of defendants Southwest and Glatstein's motion to dismiss the claims against them in the second amended complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Moses added Southwest and Glatstein as defendants in the second amended complaint and alleged that they were liable for conspiracy, fraudulent misrepresentation, fraudulent omission, negligent misrepresentation, negligence, and promissory estoppel.

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim. Schaller Tel. Co. v. Golden Sky Sys., 298 F.3d 736, 740 (8th Cir. 2002). In reviewing the adequacy of a complaint's allegations under Federal Rule of Civil Procedure 12(b)(6), we accept the allegations in the complaint as true and draw reasonable inferences in favor of the nonmoving party, dismissing only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004) (internal quotation omitted). Because this is a diversity case, we interpret Missouri law in determining whether the elements of the offenses have been pled. See Gray v. AT&T Corp., 357 F.3d 763, 765 (8th Cir. 2004). Although the pleading standard is liberal, the plaintiff must allege facts—not mere legal conclusions—that, if true, would support the existence of the claimed torts. See Schaller Tel. Co., 298 F.3d at 740. We agree with the district court that each allegation against Southwest and Glatstein in the complaint is deficient on its face and we affirm the dismissal.

Moses's second amended complaint made several general allegations about Southwest and Glatstein, which it claims supported its multiple interrelated tort

claims. The complaint alleged that Southwest made statements in its January 31, 2000, press release that were false and misleading. The press release stated that Southwest was converting its clearing business to CSS software, noting that the conversion was the culmination of a process begun in January 1998 and that it intended to complete the conversion to solely CSS software by the end of February.[3] The complaint urged that the press release misrepresented the capabilities of the CSS system "because [Southwest] had not completely converted to CSS software," Appellant's App. 98, and because Southwest knew of numerous problems with the software's implementation. The complaint further asserted that the statements "were intended to convince CSS's current customers that CSS was able to supply the functional computer system" and that it had already developed and was successfully using such a system. Id. at 100. The complaint also alleged that Glatstein was an officer of Southwest and a member of the board of directors of CSS who:

> had direct knowledge of the inability of CSS's software application to account for trades and comply with all state and federal securities regulations and/or difficulties in operating as software application to provide real time, front-to-back office system for on-line securities trading, processing and accounting. He also had actual or constructive knowledge of CSS's tortious conduct alleged in this amended complaint and participated in it.

---

[3]We may examine the press release in our consideration of the 12(b)(6) motion to dismiss, even though it was not expressly part of the pleadings, because it was incorporated into the pleadings by reference—the complaint specifically mentioned it as a ground for Moses's claims against Southwest and Glatstein. See Deerbrook Pavilion, LLC v. Shalala, 235 F.3d 1100, 1101 (8th Cir. 2000) (stating that "[o]n a motion to dismiss, a court must primarily consider the allegations contained in the complaint, although matters of public and administrative record referenced in the complaint may also be taken into account"); Venture Assoc's Corp. v. Zenith Data Sys., 987 F.2d 429, 431 (7th Cir. 1993) (indicating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim").

Id. at 92. The complaint later repeated that Glatstein "failed to disclose the complete truth," and that his statement in the press release "that SSI was successfully utilizing CSS's software" was false and misleading. The complaint also stated generally that defendants "reached a meeting of the minds to mislead CSS's customers." Id. at 101.

The complaint's conclusory legal accusations, although using language that arguably stated the elements of the alleged torts, are insufficient to state claims because they failed to include specific factual allegations.

Moses was required to allege facts that would satisfy the following elements in order to state a civil conspiracy claim under Missouri law: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby injured." Phelps v. Bross, 73 S.W.3d 651, 657 (Mo. Ct. App. 2002); see also Gibson v. Brewer, 952 S.W.2d 239, 245 (Mo. 1997) (en banc). We agree with the district court that although Moses alluded to a meeting of the minds in the complaint, it did not support the assertion with any specific allegations of collusion and thus cannot withstand the motion to dismiss. The only mention of Southwest and Glatstein as participants in the conspiracy was the statement that they had "knowledge" that the software did not have full functionality and that Southwest's press release indicated that it utilized the software. Mere knowledge neither constitutes an act in furtherance of the conspiracy nor supports the inference that Southwest and Glatstein intended harm to Moses. Accordingly, we agree with the district court's conclusion that Moses's "conclusory allegations and speculation" without factual grounds are insufficient to support a claim of conspiracy against Southwest and Glatstein. See D. Ct. Order of Feb. 6, 2002, at 9.

Moses also failed to adequately allege the elements of fraudulent misrepresentation: "(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be

acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury." Gast v. Ebert, 739 S.W.2d 545, 547 (Mo. 1987) (en banc). To recover for fraudulent misrepresentation, the plaintiff must establish every element. Artilla Cove Resort, Inc. v. Hartley, 72 S.W.3d 291, 297 (Mo. Ct. App. 2002). A party fails to sufficiently allege fraud "when the facts and circumstances presented are as consistent with honesty and good faith as they are with fraud." Blanke v. Hendrickson, 944 S.W.2d 943, 944 (Mo. Ct. App. 1997). Moses argues that its allegations about the language of Southwest's press release were sufficient to state its claim for fraudulent misrepresentation. Moses failed to allege any facts, however, that could support an inference that the press release was directed towards it with the intent that it rely on any particular statement therein. Even if the press release contained misstatements, it would not amount to fraudulent misrepresentation without some facts that suggest a specific intent on the part of Southwest to target Moses.[4]

A variation of fraudulent misrepresentation is fraudulent omission. Silence may amount to a representation, constituting the first element of fraudulent misrepresentation, if the party sought to be held accountable for fraud (1) conceals material facts and (2) has a legal duty to disclose such facts. See VanBooven v. Smull, 938 S.W.2d 324, 328 (Mo. Ct. App. 1997) (per curiam). A legal duty to speak "may arise from a relationship of trust or confidence, an inequality of condition, or superior knowledge that is not reasonably available to the other party." Ziglin v. Players MH, L.P., 36 S.W.3d 786, 791 (Mo. Ct. App. 2001) (internal citation omitted). In its complaint, Moses asserts that the defendants were aware of many problems with the CSS software that they did not disclose to Moses. Moses claims

_____

[4]The conclusory statement in the complaint that Southwest's press release "was intended to induce Moses.com to continue working with CSS," Appellant's App. 109, is insufficient to establish a specific target for a general press release.

-13-

that the defendants had a duty to speak "because they had superior knowledge regarding the state of their software application" insofar as it was not performing well at Southwest. The mere assertion that Southwest is connected to CSS as a member of the joint venture that established CSS and as a CSS client, however, is insufficient to establish a legal duty to disclose information about its experience as a CSS client to another client that would likely become a competitor in the securities industry. We therefore agree with the district court that Moses's relationship with Southwest and Glatstein was not "such as would support a claim of fraudulent omission." D. Ct. Order of Feb. 6, 2002, at 12.

To state a claim for negligent misrepresentation, Moses was required to allege facts that support the following elements: (1) the defendants supplied or omitted information in the course of business; (2) because they failed to exercise reasonable care, the information was false; (3) the information was provided by the defendants to the plaintiff in a particular business transaction; and (4) the plaintiff relied on the information and thereby suffered pecuniary loss. Ziglin, 36 S.W.3d at 790. A party is not justified in relying on a speaker's representation, however, if the representation concerns a future action of a third party that is outside of the speaker's control. Wellcraft Marine v. Lyell, 960 S.W.2d 542, 547 (Mo. Ct. App. 1998). Moses cannot succeed on its claim because the facts, as alleged, indicate that the press release, by definition, was issued to the public at large, that Moses never engaged in a business transaction with Southwest, and that Moses could not have relied on the press release in initially deciding to hire CSS because the press release was issued months after CSS and Moses had signed the letter of intent.

Moses's remaining claims of promissory estoppel and negligence implicated Southwest and Glatstein only as part of the alleged conspiracy and were therefore also properly dismissed.[5]

**B.**

In light of our conclusion that Moses failed to state a claim against Southwest and Glatstein in its second amended complaint, we also address Moses's argument that the district court should have allowed it to file a third amended complaint re-pleading its claims against Southwest and Glatstein and adding seven more defendant companies: the companies that formed the joint venture that initially established CSS. We review the district court's decision to deny leave to amend a complaint for abuse of discretion. Hammer v. City of Osage Beach, 318 F.3d 832, 844 (8th Cir. 2003).

If a responsive pleading has already been served, "a party may amend the party's pleading only by leave of court . . . and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A district court may appropriately deny leave to amend "where there are compelling reasons 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" Hammer, 318 F.3d at 844 (quoting Becker v. Univ. of Nebraska, 191 F.3d 904, 907-08 (8th Cir. 1999)). In most cases, "[d]elay alone is insufficient justification; prejudice to the nonmovant must also be shown." Bell v. Allstate Life Ins. Co., 160

---

[5]Moses claims that Glatstein is liable for the acts of CSS, not just based on the conspiracy, but because he is a member of the board of directors of CSS. This claim was not expressly pled in the second amended complaint, and therefore did not have to be considered as part of the motion to dismiss. Even if it had been pled, however, it would have been properly dismissed because a corporate officer is individually liable for acts of the corporation only "if he or she had 'actual or constructive knowledge of, and participated in, an actionable wrong.'" State ex rel. Doe Run Res. Corp. v. Neill, 128 S.W.3d 502, 505 (Mo. 2004) (en banc) (citation omitted). Moses has alleged no such direct and knowing participation by Glatstein.

F.3d 452, 454 (8th Cir. 1998). Unexcused delay is sufficient to justify the court's denial, however, if the party is seeking to amend the pleadings after the district court has dismissed the claims it seeks to amend, particularly when the plaintiff was put on notice of the need to change the pleadings before the complaint was dismissed, but failed to do so. See Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.), 130 F.3d 309, 322 (8th Cir. 1997).

We conclude that the district court was justified in denying leave to amend. The district court had already twice granted leave to amend. It denied the third motion for leave to amend based on undue delay and prejudice to existing defendants, "as numerous motions to dismiss ha[d] already been briefed and ruled, and discovery in [the] matter [was] now well underway." D. Ct. Order of Mar. 20, 2003 at 3-4. Moses argues that, because the third motion to amend was filed within the time established by the district court's order, it should have been granted. Its argument fails, however, because the scheduling order merely prescribes the date by which all such motions "shall be filed"; the date on the scheduling order does not confine the district court's consideration of the merits of such motions and does not preclude it from finding that an amendment would result in prejudice.

The district court reasonably rejected the amended complaint involving renewed claims against Southwest and Glatstein. Moses already had the opportunity to amend the complaint and cure its defects when the district court ruled that the allegations in the first amended complaint were too indefinite to resolve Southwest and Glatstein's first motions to dismiss, but failed to resolve the deficiencies in the second amended complaint. The district court could therefore reasonably conclude that Moses had "proffered no adequate reason explaining" its failure to cure the known defect earlier, see St. Louis Fire Fighters Ass'n v. City of St. Louis, 96 F.3d 323, 330 (8th Cir. 1996), and it was not required to allow Moses a further opportunity. The district court also reasonably rejected the addition of seven new defendants, finding that prejudice would result against CSS. Moses had been aware

of the existence of the companies in 1999 before it first initiated the suit, <u>see</u> Tr. vol. VI at 14-16 (testimony of Winkelmann during offer of proof), and adding seven new parties three years later would certainly "impose additional discovery requirements," <u>Bell</u>, 160 F.3d at 454, and would further delay the conclusion of the case.  The district court therefore did not abuse its discretion in denying leave to amend the complaint.

The judgment is affirmed.

_____