# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1725

_____

Gregory M. Cole; Cole's Tractor      *
& Equipment, Inc.,     *

    *

      Appellants,     *   Appeal from the United States
    *   District Court for the
    v.     *   Western District of Missouri.
    *
Homier Distributing Company, Inc.,     *
    *
      Appellee.     *

_____

Submitted: December 16, 2009
Filed:  March 29, 2010

_____

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

This appeal involves claims arising out of the dissolution of agreements between Appellants and Appellee.  At the district court, Appellants asserted two breach-of-contract claims, as well as claims for violation of the Missouri Franchise Act, Mo. Rev. Stat. § 407.405, tortious interference with contracts and business expectancies, and fraud.  The district court granted Appellee's motion to dismiss the latter two counts for failure to state a claim.  After discovery, the district court granted Appellee's motion for summary judgment on the remaining counts because Appellants were unable to prove damages.  For the following reasons, we affirm in part and reverse in part.

## I. Background

Gregory Cole is the sole owner of Cole's Tractor & Equipment, Inc., a closely held Missouri corporation dealing in the sale, distribution, and repair of tractors and other equipment.[1] Homier Distributing Company, Inc. is an Indiana corporation that, among other things, sells and distributes Farm Pro tractors and other equipment. In December 2002, Cole entered into an oral agreement with Homier under which Cole became a distributor and dealer of the Farm Pro tractor line. According to the complaint, Cole "agreed to establish dealerships throughout Missouri for the resale of [Farm Pro] tractors and related products, and to also resell [Farm Pro] tractors and related products to retail customers." The agreement permitted Cole to establish dealerships in other states, so long as Homier approved them. In return, Homier agreed that Cole would be the exclusive Missouri distributor of Farm Pro tractors.

As a result of the oral agreement, Cole established more than thirty dealerships in Missouri between December 2002 and September 2004. During this time, a number of Cole's Missouri dealerships resold Farm Pro tractors and related equipment on the internet through electronic auction websites. In July 2004, however, Homier sent out a memorandum announcing a new policy forbidding dealers from selling Farm Pro products on electronic auction websites. The policy did not explicitly prohibit such sales by Homier itself. Cole alleges, however, that subsequent written

---

[1]Prior to the time of incorporation, February 9, 2004, when Gregory Cole transferred all his rights and assets to Cole's Tractor & Equipment, Inc., he operated his business as a sole proprietorship. We refer to Appellants collectively as "Cole" unless otherwise noted. To the extent that claims arise out of events taking place after the formation of Cole's Tractor & Equipment, Inc., it is the corporation, not Gregory Cole, that has standing to sue. See Potthoff v. Morin, 245 F.3d 710, 716 (8th Cir. 2001).

agreements, as discussed below, prohibited Homier from making direct-to-public internet-auction sales and that Homier breached these agreements.

On September 20, 2004, the parties memorialized their oral agreement in two written documents: the Distributorship Agreement and the Distributor Caged Tractor[2] Purchase Agreement (the "Purchase Agreement"). Under the terms of the Distributorship Agreement, Homier agreed not to "supply or distribute any whole goods to the dealers of Cole's Tractor & Equipments, Inc." The Distributorship Agreement also maintained Cole's right as the exclusive distributor of "whole goods" in Missouri. The Distributorship Agreement defined "whole goods" as "tractors, recreational vehicles, and larger motor driven shop related equipment." It also provided that either party could terminate the agreement, for cause, so long as that party gave ninety days' notice. The Purchase Agreement allowed Cole to purchase, assemble, and sell caged tractors. It also required Cole to "keep a readily available shelf stock of parts," and if parts were not available from Homier, to get permission from Homier before purchasing parts elsewhere.

By June 2007, Cole's and Homier's sales had declined rapidly. Cole had originally established thirty-eight Farm Pro Dealerships, but only twenty-four of those dealerships remained in operation as of June 2007. Cole alleges that this decline was due to Homier's failure to provide tractors (both assembled and unassembled), implements, repair parts, and other equipment. Cole also attributes the decline to Homier's price increase on Farm Pro tractors and equipment. On June 15, 2007, Homier sent Cole a letter giving notice of its intent to terminate the Distributorship Agreement within ninety days. The letter cited as the reason for termination Cole's declining sales performance and failure to develop its territory for Farm Pro tractors. The letter noted, however, that the termination did not affect Cole's ability to act as

_____

[2]"Caged" or "Crated" tractors are tractors that arrived at the distributorship unassembled.

-3-

a Farm Pro dealer. Cole alleges that before and during the ninety-day notice period, Homier contacted Cole's dealerships for marketing purposes and made sales of parts, products, implements, and tractors directly to those dealerships.

In July 2007, Cole filed an action against Homier in Missouri state court, alleging breach of contract (Counts I and II), tortious interference with contracts and business expectancies (Count III), fraud (Count IV), and constructive termination of the Distributorship Agreement without ninety days notice, in violation of Mo. Rev. Stat. § 407.405 (Count V). Homier removed the case to federal court based on diversity of citizenship. See 28 U.S.C. § 1332. The district court then granted Homier's motion to dismiss Counts III and IV for failure to state a claim upon which relief could be granted.

Discovery closed December 31, 2008, and on January 20, 2009, Homier filed a Daubert[3] motion to exclude the expert report of Dr. Bart Basi, Cole's damages expert. Homier also moved for summary judgment based, in part, on Cole's inability to prove damages. The district court granted Homier's Daubert motion, and upon determining that Cole could not otherwise prove damages, granted Homier's motion for summary judgment on Counts I and II. It also dismissed Count V, finding that there was no proof of sales made during the relevant time period. Finally, the district court denied Cole's motion to strike exhibits attached to Homier's reply memoranda and alternative motion for leave to respond to those exhibits. The district court found that the motions were either moot as a result of its decision or otherwise ill-founded. Cole appeals each of these rulings.

---

[3]Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

## II. Motion to Dismiss

We begin by addressing Cole's argument that the district court erred in dismissing its claims for tortious interference and fraud. "We review the district court's grant of a motion to dismiss *de novo*." Anderson-Tully Co. v. McDaniel, 571 F.3d 760, 762 (8th Cir. 2009). Because this is a diversity case, we apply federal procedural rules and Missouri substantive law. Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). To survive a motion to dismiss, a claim must be facially plausible, meaning that the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). When determining whether a claim is facially plausible, we "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005). Where we can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. Iqbal, 129 S. Ct. at 1950.

## A. Tortious Interference (Count III)

Count III of Cole's complaint alleges a claim for tortious interference with contracts and business expectancies. Under Missouri law, a tortious interference claim requires that a plaintiff prove: "'(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct.'" Horizon Mem'l Group, LLC v. Bailey, 280 S.W.3d 657, 662 (Mo. Ct. App. 2009) (citation omitted). Cole claims that Homier tortiously interfered with Cole's dealer relationships by selling directly to Cole's dealers in violation of the Distributor Agreement. The district court dismissed this claim, finding that because the dealership agreements

were not preexisting, but arose out of the agreements with Homier, Cole could not state a claim for tortious interference. We agree.

Under Missouri law, a plaintiff need not have an existing contract with a third party to maintain a claim for tortious interference. Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 251 (Mo. 2006). It is sufficient that a plaintiff have "a probable future business relationship that gives rise to a reasonable expectancy of financial benefit." Id. However,"when a contract alone creates a business expectancy, [a] plaintiff cannot bring a claim for interference with a business expectancy against a party to that contract." BMK Corp. v. Clayton Corp., 226 S.W.3d 179, 191 (Mo. Ct. App. 2007); see also Kelly v. State Farm Mut. Auto. Ins. Co., 218 S.W.3d 517, 525 (Mo. Ct. App. 2007); Jurisprudence Wireless Commc'ns, Inc. v. CyberTel Corp., 26 S.W.3d 300, 302 (Mo. Ct. App. 2000). This rule does not mean that "a party may not have a valid business expectancy in a preexisting and independent business relationship just because the preexisting relationship relies upon a third-party supply contract to furnish the subject of their agreement." BMK, 226 S.W.3d at 191. The critical issue in this case, then, is whether Cole had independent business relationships with its dealers predating its agreement with Homier. The complaint demonstrates that Cole had no such relationships.

There are two relevant sets of agreements: the Cole–Homier Distributorship Agreement, under which Cole became a licensed Farm Pro distributor, and the Cole–dealership agreements, under which Cole distributed Farm Pro products to its dealerships. The Cole–dealership agreements are the agreements with which Cole alleges Homier interfered. But Cole had no business relationship with the dealerships prior to the Distributorship Agreement. Cole's relationship with its dealers arose only because it entered into the Distributorship Agreement with Homier. As Cole stated in its complaint, Cole did not begin to establish these dealerships until after it became a licensed Farm Pro distributor. Cole has thus failed to articulate any independent

business relationship with its dealers that predated its agreement with Homier. Without this, we must dismiss Cole's claim for tortious interference.

Cole's reliance on American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135 (8th Cir. 1986) and BMK does not persuade us to the contrary. Cole argues that these cases, both of which permitted claims for tortious interference, are materially indistinguishable from the facts of the instant case. In both cases, however, the plaintiff had a legitimate expectancy arising out of a prior business relationship. See Am. Bus. Interiors, 798 F.2d at 1143–44 (noting plaintiff's "extensive prior dealings"); BMK, 226 S.W.3d at 190–192 (noting that plaintiff had a preexisting business relationship "wholly separate" from its relationship with the defendant). Therefore, American Business and BMK are not supportive of Cole's position, and we affirm the district court.

## B. Fraud (Count IV)

Count IV of Cole's complaint alleges fraud. To succeed in a fraud claim under Missouri law, a plaintiff must prove: (1) a defendant made a material representation; (2) with knowledge of its falsity; (3) with intent that plaintiff rely on that representation; (4) that the plaintiff was ignorant of the falsity; (5) that the plaintiff justifiably relied upon the representation; and (6) that plaintiff was damaged by that representation. See Ryann Spencer Group, Inc. v. Assurance Co. of Am., 275 S.W.3d 284, 287 (Mo. Ct. App. 2008). Cole alleges that, upon entering into the oral agreement with Homier, Homier represented that it would provide Cole with an exclusive distributorship in Missouri if Cole would establish dealerships in Missouri and surrounding states. Cole alleges that, at the time Homier made this representation, Homier's true intention was to induce Cole to establish a dealership network and then, once this had been accomplished, bypass the distributor relationship with Cole and deal directly with the newly established dealerships. It is undisputed that Homier has eliminated the distributor relationship and now deals directly with the dealerships.

-7-

However, the issue below and now on appeal is whether, at the time of the oral agreement, Homier intended not to perform consistently with its statements. "[A]bsent such an inconsistent intent there is no misrepresentation of fact or state of mind but only a breach of promise or failure to perform." Craft v. Metromedia, Inc., 766 F.2d 1205, 1219 (8th Cir. 1985) (applying Missouri law). The district court found that Cole failed to sufficiently allege that Homier intended not to perform the contract at the time of its formation. For this reason, the district court dismissed Cole's fraud claim.

On appeal, Cole alleges that Homier manifested an intent not to perform at the time of the agreement by: (1) preferring oral agreements; (2) failing to provide sufficient repair and replacement parts in breach of an implicit promise in the oral agreement; (3) giving inconsistent grounds for terminating the Distributorship Agreement; and (4) contacting Cole's dealerships prior to terminating the Distributorship Agreement. We find that these allegations do not provide grounds to infer an intent to defraud at the time of formation.

We begin with the first two allegations. The complaint indicates that, although Homier may have desired to maintain oral agreements, it did in fact memorialize the oral agreement with Cole after performing under that agreement for nearly two years. Further, the complaint does not allege that the oral agreement[4] contained any promise—implicit or otherwise—to provide replacement parts. Even if it did, the complaint alleges that this failure began after September 20, 2004, nearly two years after the parties entered into the oral agreement. We recognize that, pursuant to Cole's allegations, the fact that Homier performed under the agreement for two years is not necessarily inconsistent with Cole's theory. Under Cole's theory, it would seem

_____

[4]We note that Cole does allege that there was an agreement implicit in the written contract that Homier would maintain sufficient replacement parts. Cole alleges, however, that the oral agreement is the agreement from which the fraudulent misrepresentation in this case arose.

necessary for Homier to perform—at least for some period of time—in order for Cole to take the steps necessary to establish dealerships. Thus, we do not foreclose a fraud claim merely because the party alleged to have perpetrated the fraud performed under the contract for some period of time. In this case, however, Cole's allegations, without more, are just as consistent with a present intent to perform as they are with fraud. Such allegations are not enough to transform a breach-of-contract claim into a fraud claim. See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1064 (8th Cir. 2005) (citing Blanke v. Hendrickson, 944 S.W.2d 943, 944 (Mo. Ct. App. 1997)).

Cole's third allegation states that Homier's inconsistent grounds for terminating the Distributorship Agreement create an inference of Homier's intent to defraud at the time of the agreement. Cole claims that, although Homier cited Cole's poor performance in the termination letter as the reason for terminating the Distributorship Agreement, Cole was in fact Homier's best distributor and Homier itself was also suffering losses. But neither the complaint nor any documents attached to or referenced in the complaint support this argument. See Great Plains Trust Co. v. Union Pac. R.R. Co., 492 F.3d 986, 990 (8th Cir. 2007) (stating that on a motion to dismiss, "we may consider documents attached to the complaint and matters of public and administrative record referenced in the complaint."). The alleged inconsistency stems from deposition testimony and acknowledgments by Homier that are not part of the documents we are permitted to consider in ruling on a motion to dismiss. Accordingly, Cole cannot overcome a motion to dismiss on this ground. Even if we were to consider these outside documents, the explanation that Homier provided in its termination letter simply is not inconsistent with the allegations that Cole now puts forth on appeal.

Finally, the allegation that Homier breached the agreement by contacting dealerships prior to and during the notice period does not demonstrate an intent to defraud at the time the parties entered into the agreement. Missouri courts have stated

on numerous occasions that the necessary intent cannot be established merely by pointing to the defendant's subsequent breach. See, e.g., Emerick v. Mut. Benefit Life Ins. Co., 756 S.W.2d 513, 519–20 (Mo. 1988); Softka v. Thal, 662 S.W.2d 502, 507 (Mo. 1983); Dillard v. Earnhart, 457 S.W.2d 666, 671 (Mo. 1970). Cole's allegations do no more than suggest that Homier, for one reason or another, changed its mind as to how it wished to deal with distributors. This, as a matter of law, is insufficient to state a claim for fraud. See Craft, 766 F.2d at 1221; see also Restatement (First) of Torts § 530 cmt. a (1938) ("[O]ne who acts in justifiable reliance upon another's honest statement of his then existing intention cannot maintain an action for the loss caused by the disappointment of his expectations if the other for any reason, good or bad, changes his mind and fails" to perform.).

Having considered Cole's allegations in the light most favorable to Cole, and drawing all reasonable inferences in Cole's favor, we find that Cole has failed to allege facts that plausibly could suggest Homier intended not to perform at the time of the oral agreement.

### III. Summary Judgment

We next address Cole's claim that the district court erred in granting summary judgment on Counts I, II, and V. We review the district court's grant of summary judgment de novo. Reynolds v. RehabCare Group East, Inc., 591 F.3d 1030, 1032 (8th Cir. 2010). "Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Myers v. Lutsen Mtns. Corp., 587 F.3d 891, 893 (8th Cir. 2009). If a nonmoving party has failed to establish the existence of an element of that party's claim, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

Here, the district court excluded Cole's proffered damages expert, Dr. Basi, who planned to testify as to Cole's lost-profit damages. It further held that Cole had no alternative means of proving damages, finding that Cole's affidavits on damages, submitted after Homier moved to exclude Dr. Basi's testimony, contradicted Cole's representation throughout discovery that it was relying on Dr. Basi to prove damages. Accordingly, the district court granted summary judgment on Counts I and II. It also granted summary judgment on Count V, finding that Cole's statements regarding sales of whole goods without ninety days' notice were without evidentiary support and therefore insufficient to create a question of material fact. Cole appeals each of these rulings.

## A. Counts I and II (Contract Claims)

Under Missouri law, a plaintiff in a contract action generally has the burden of proving "the existence and amount of . . . damages with reasonable certainty." Ullrich v. CADCO, Inc., 244 S.W.3d 772, 779 (Mo. Ct. App. 2008). When a claim involves lost-profit damages, it is enough that a plaintiff "provide[] an adequate basis for *estimating* lost profits with reasonable certainty." Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc., 155 S.W.3d 50, 54 (Mo. 2005) (emphasis added). The failure to meet this burden properly results in summary judgment. See Celotex, 477 U.S. at 322; see also Manor Square, Inc. v. Heartthrob of Kansas City, Inc., 854 S.W.2d 38, 45 (Mo. App. 1993) (granting summary judgment for failure to put forth sufficient evidence to calculate damages with "reasonable certainty"). We begin by addressing Dr. Basi's report and then proceed to consider whether, in the alternative, Cole can prove damages without Dr. Basi's report.

### 1. Dr. Basi's Damages Report

"Expert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue." Hartley v. Dillard's, Inc., 310 F.3d 1054, 1060

(8th Cir. 2002); see also Fed. R. Evid. 702. Although the factual basis of an expert's opinion is generally an issue of credibility rather than admissibility, an expert's opinion should be excluded if it "'is so fundamentally unsupported that it can offer no assistance to the jury.'" Bonner v. ISP Techs., Inc., 259 F.3d 924, 929–30 (8th Cir. 2001) (quoting Hose v. Chicago N.W. Transp. Co., 70 F.3d 968, 974 (8th Cir. 1996)).

The district court found Dr. Basi's testimony inadmissible because his report relied on incorrect factual premises and contained speculative calculations. "A district court enjoys wide discretion in ruling on the admissibility of proffered evidence, and evidentiary rulings should only be overturned if there was a clear and prejudicial abuse of discretion." US Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 689–90 (8th Cir. 2009) (internal quotations and citations omitted). Upon review, we hold that the district court did not abuse its discretion in finding that Dr. Basi's report was flawed both factually and methodologically.

To begin, Dr. Basi's report is factually flawed, rendering it of little to no assistance to the jury. See Bonner, 259 F.3d at 929–30. Principally, Dr. Basi assumed that Cole lost its ability to make sales of Farm Pro equipment when Homier terminated the Distributorship Agreement. Thus, when calculating Cole's damages, Dr. Basi categorized as "lost" Cole's profits as both a distributor and a dealer. The termination letter, however, explicitly stated that it did "not apply to [Cole's] status as a dealer of Homier Farm Pro product lines. Homier would still encourage you to be an authorized Farm Pro dealer." Further, the record indicates that Cole recognized that its status as an authorized Farm Pro dealer had not been terminated. Also, Cole had Farm Pro tractors in stock available for sale, and Homier did not prevent Cole from purchasing tractors from Homier in a dealership capacity.[5] Dr. Basi's report indicates

---

[5]Cole argues on appeal that there was no separate dealership agreement. But this is of no import to our decision and we need not decide the issue. Regardless of whether there was a separate agreement, the record illustrates that Cole was permitted to sell Farm Pro tractors and had Farm Pro tractors in stock available for sale. Dr.

that he was either unaware of or disregarded these facts.  Thus, his lost-profit analysis takes into account income stemming from Cole's ability to sell Farm Pro in a dealer capacity, which could not have been lost as a result of Homier's termination of the Distributorship Agreement.

Cole criticizes the district court's order for focusing on factual errors in Dr. Basi's opinion, rather than on whether it was based upon valid accounting methods. Cole argues that these are questions for a jury, going to credibility or weight rather than admissibility.  But where, as here, the expert's analysis is unsupported by the record, exclusion of that analysis is proper, as it can offer no assistance to the jury.

Alternatively, the district court properly excluded Dr. Basi's report because his report failed to rise above the level of speculation.  The district court found that Dr. Basi's report was speculative because, among other things, the report used a twenty-five year computation period based on Gregory Cole's retirement age and qualification for government benefits.  In reaching this conclusion, the district court cited our decision in Structual Polymer Group, Ltd. v. Zoltek Corp., 543 F.3d 987 (8th Cir. 2008), in which we stated, "Under Missouri law, '[l]ost profits related to a breach preventing performance are recoverable provided the loss is . . . ascertainable with reasonable certainty, is not speculative or conjectural, and was within the contemplation of the parties when the contract was formed.'"  Id. at 997 (quoting Farmers' Elec. Coop., Inc. v. Mo. Dep't of Corr., 59 S.W.3d 520, 522 (Mo. 2001)). The district court also cited our decision in Tipton v. Mill Creek Gravel, Inc., 373 F.3d 913 (8th Cir. 2004), in which we noted the "exacting" requirement for proof of lost-profit damages under Missouri law.  Id. at 918 (quoting Ozark Employment Specialists, Inc. v. Beeman, 80 S.W.3d 882, 897 (Mo. Ct. App. 2002)); see also

---

Basi's failure to incorporate these facts into his analysis creates a fundamental disconnect between the facts of the case and his report.

Coonis v. Rogers, 429 S.W.2d 709, 714 (Mo. 1968) (noting the "stringent requirements" for lost-profit damages).

Cole argues that the standard applied by the district court was too demanding, and that the Missouri Supreme Court has subsequently relaxed its requirements in regard to lost-profit damages. We are not convinced that this is correct. As in earlier cases, e.g., Coonis, 429 S.W.2d at 713–14, current Missouri cases, while not requiring exact calculations, have maintained that the amount of lost-profit damages cannot rest upon mere speculation, see Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc., 279 S.W.3d 179, 185–86 (Mo. 2009); Wandersee v. BP Prods. N. Am., Inc., 263 S.W.3d 623, 633–34 (Mo. 2008); Ameristar, 155 S.W.3d at 54–55. Here, Dr. Basi's lost-profit forecast extends for twenty-five years—a figure that has nothing to do with the continuation of Cole's contractual relationship with Homier. The Distributorship Agreement expressly states that it "may be terminated, by either party, for cause, giving at least 90 days written notice." The notion that performance under this contract would continue for twenty-five years is too speculative for us to find that the district court abused its discretion. See Meterlogic, Inc. v. KLT, Inc., 368 F.3d 1017, 1019 (8th Cir. 2004) (finding exclusion of expert testimony warranted, in part, because the expert "predicted financial results ten years into the future even though the parties' contract extended only two years and allowed for termination at any time.").

We recognize that at least one court, applying Missouri law, has not been troubled by such predictions. See Tri State HDWE, Inc. v. John Deere Co., 532 F. Supp. 2d 1102, 1108–09 (W.D. Mo. 2007). However, given our highly deferential standard of review, we cannot find that the district court erred by taking issue with Dr. Basi's twenty-five year forecast in this case. For the same reason, the fact that the agreement in this case requires cause for termination and extends indefinitely does not alter our decision. There are simply too many future uncertainties for us to say that the district court abused its discretion by excluding as overly speculative a twenty-five

year forecast—based solely on age and ability to qualify for government benefits—even if the Distributorship Agreement required cause for termination.

We do not disagree with Cole that lost profits often defy exactitude and that "an adequate basis for estimating lost profits with reasonable certainty" is sufficient. See Wandersee, 263 S.W.3d at 633. However, in a spectrum ranging from speculation to exactitude, Dr. Basi's report is too close to the former for us to find that the district court abused its discretion. Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1057 (8th Cir. 2000) ("Expert testimony that is speculative is not competent proof and contributes 'nothing to a legally sufficient evidentiary basis.'") (quoting Weisgram v. Marley Co., 528 U.S. 440, 454 (2000)). Accordingly, we affirm the district court's decision to exclude Dr. Basi's report.

## 2. Other Damages Testimony

Having decided that the district court did not abuse its discretion by excluding Dr. Basi's testimony, we must address Cole's claim that it can prove damages though other means. After Homier moved for summary judgment, Cole subsequently submitted affidavits and deposition errata sheets in which it claimed to be able to prove damages without Dr. Basi. The district court held that Cole was precluded from using other evidence because this testimony was contrary to the position that Cole had maintained throughout discovery in regard to its damages calculations. We review this holding for abuse of discretion. Yates v. Rexton, Inc., 267 F.3d 793, 802 (8th Cir. 2001).

Generally, a court should consider an affidavit submitted in response to a motion for summary judgment when that affidavit elaborates upon or clarifies information already submitted. Popoalii v. Corr. Med. Servs., 512 F.3d 488, 498 (8th Cir. 2008). However, a party cannot avoid summary judgment by contradicting previous sworn testimony. Id.; Webb v. Garelick Mfg. Co., 94 F.3d 484, 488 (8th Cir. 1996). "If testimony under oath . . . can be abandoned many months later by the filing

-15-

of an affidavit, probably no cases would be appropriate for summary judgment." Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983).

Cole first argues that its affidavits and deposition errata sheets are merely clarifications and that they do not contradict its prior testimony. But the record reveals otherwise. In both its response to Homier's interrogatories and at all subsequent depositions, Cole maintained that it was relying on Dr. Basi to calculate its damages and otherwise had no damages calculations. The subsequent claim that it had made and was relying on damages calculations created without the aid of Dr. Basi's expert report is plainly to the contrary. Second, Cole attempts to justify its inability to provide damages calculations on the ground that the documents necessary to prove those damages were not available until the close of discovery. The record shows, however, that Homier made these documents available to Cole well before the close of discovery; Cole simply failed to request to inspect the documents. A party's own failure to examine available documents cannot justify a subsequent contradiction of prior testimony.

Finally, Cole notes on appeal that Homier's response to Cole's interrogatories indicates sales of "$95,513.90 worth of tractors[6] and parts to Plaintiffs' dealerships" prior to notice of termination. Setting aside any question of whether there was evidence that these were sales of whole goods, as prohibited by the Distributorship Agreement, or whether this is contradictory to Cole's prior representations, Cole did not plead contract damages arising out of sales that Homier allegedly made to dealerships. In its contract claims, Cole alleged damages arising out of Homier's: (1) termination of the agreements without good cause; (2) sale of whole goods directly to *the public* within Missouri; (3) failure to provide tractors and other equipment in sufficient volume to meet Cole's resale needs; and (4) failure to provide sufficient repair parts to Cole for Cole to meet its warranty obligations. There is nothing in the

---

[6]The actual language in the interrogatory response does not state that Homier made tractor sales. It only specifies parts and equipment.

complaint that would have notified Homier that Cole was seeking damages in its contract claims arising out of direct-to-dealer sales. It cannot, therefore, be used to oppose summary judgment. See N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004) ("[W]hile we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purposes of avoiding summary judgment."). Accordingly, we find that the district court did not abuse its discretion in refusing to consider Cole's supplemental testimony and we affirm the dismissal of Counts I and II.

B. Mo. Rev. Stat. § 407.405 (Count V)

Mo. Rev. Stat. § 407.405 prohibits termination of a franchise agreement without ninety days' notice. Cole alleged that Homier violated this provision by making sales to Cole's dealerships prior to and during the ninety-day period following Homier's notice of termination. In its motion for summary judgment, Homier argued that there was no evidence that it made any sales without ninety days' notice. Cole responded by filing an affidavit in which it noted $3,247.84 worth of sales during the ninety-day notice period. The district court found that this was a "sham issue" and that Cole could provide no documentary evidence that Homier made any sale of whole goods during that time period and therefore granted summary judgment to Homier on the ground that Cole could not prove it had been damaged.

We cannot agree with the district court that Cole failed to present documentary evidence on this claim. After reviewing the record in the light most favorable to Cole, we are convinced that there are factual issues as to whether Homier made sales of whole goods during the notice period. In her deposition from September 24, 2008, Christy Cole not only stated that she believed that Homier made direct sales of whole goods (a log splitter and two generators) during the ninety-day notice period, but she also referenced the pages in the invoices where these sales and the prices for the relevant goods were recorded. She confirmed this and again referenced the relevant

-17-

documents in her December 31, 2008 deposition. Thus, Cole puts forth more than mere allegations—there is documentary evidence to support Cole's claim under Count V. We therefore reverse the district court's finding of summary judgment as to Count V.[7]

## VI. Conclusion

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_____

[7]Cole also appeals the district court's ruling on its motion to strike exhibits attached to Homier's reply memoranda in support of summary judgment and Cole's alternative motion for leave to respond to those materials. After reviewing the relevant documents and viewing Cole's claims in light of our decision in this appeal, we find that the district court did not abuse its discretion. Brannon v. Luco Mop Co., 521 F.3d 843, 847 (8th Cir. 2008) (stating the standard of review).