MARKER *v.* EAST ARKANSAS LUMBER COMPANY.

Opinion delivered September 30, 1918.

1. CONTRACTS—WAIVER.—An agreement by appellee to furnish money to appellant to purchase logs to supply a shingle mill during the winter months was waived by a subsequent agreement to shut down the mill during the winter months.

2. SAME—CONSIDERATION.—An agreement on appellee's part to indorse appellant's notes for advances is a sufficient consideration for a waiver of a prior agreement by appellee to furnish such advances to appellant.

Appeal from Lawrence Chancery Court, Western District; *Geo. T. Humphries,* Chancellor; affirmed.

*A. S. Irby* for appellant; *L. B. Poindexter* and *J. H. Townsend,* of counsel.

1. In addition to the amounts allowed by the court below appellant is entitled to credit for $200 expended during the overflow and $90.50 for shingles lost.

2. ' On the counterclaim set up in the cross-bill appellee is liable for damages for failure to advance money to pay for logs necessary to keep the mill running, the profits on which would be $2,400.

3. Appellee breached the contract and became liable for unliquidated damages by way of recoupment: 98 Ark. 125; 12 *Id.* 702; 16 *Id.* 103; 17 *Id.* 245; 27 *Id.* 491.

4. Appellant's plea is properly a counterclaim for damages liquidated or unliquidated. 27 Ark. 491; 66 *Id.* 406; 40 *Id.* 78; 64 *Id.* 223; Kirby's Digest, § § 6099, 6869; *Futrell,* for appellee.

5. Loss of profits as damages are properly recoverable. 71 Ark. 408; 56 *Id.* 450; 93 *Id.* 447; 80 *Id.* 228; 78 *Id.* 336; 91 *Id.* 427.

6. Prospective profits are also allowed. 111 Ark. 483; 69 *Id.* 219; 95 *Id.* 63, 522; 103 *Id.* 584.

7. The court had jurisdiction to determine all the matters at issue. 111 Ark. 336.

8. There was no waiver of damages by the agreement of December 18, 1914. This agreement only modifies the original by suspending temporarily the period of performance, and was not a waiver of any damages.

*Ponder, Gibson & Ponder* and *Huddleston, Fuhr & Futrell,* for appellee.

1. The contract was never breached by appellee by failure to make advances on logs, but if so appellant acquiesced and waived all damages. The money advanced for logs was used by appellant to pay running expenses of the mill.

2. The endorsement on the notes to the bank was made in response to an agreement and in pursuance of a waiver by appellant of further advances on logs.

3. During the time appellant contends the contract was broken and the damages occurred, he had agreed to shut down and cease operations. When one party with knowledge to a breach of contract by the other party suffered the latter to continue in performance of the contract he waives the right to insist on a forfeiture. 102 Ark. 79; 105 *Id.* 421.

4.  Appellant is entitled to no credit for work done during the flood in saving shingles.  He was saving his own property and appellee never agreed to pay him.

5.  The question of unliquidated damages and loss of probable profits cannot enter in this case.  The evidence is too indefinite and they are too uncertain.

6.  Any breach of contract by appellee was waived by appellant's agreement to suspend on December 8, 1914.

SMITH, J.  Appellee brought suit to foreclose a mortgage which had been assigned to it by the Bank of Black Rock, and obtained a decree of foreclosure.  Appellant filed an answer admitting the existence of the debt secured by the mortgage except certain items which were named, and, by way of counterclaim, alleged that he had been damaged in a large sum by reason of appellee's failure to advance the money with which to acquire, in good weather, a supply of logs to be manufactured during the bad weather.

The parties made a contract under which appellant built a shingle-mill, and appellee agreed to take the entire output of shingles and to make certain advances as the shingles were manufactured, and also to make advances for the purchase of logs.  In the construction of his mill it became necessary for appellant to borrow from the Bank of Black Rock a thousand dollars, which loan was evidenced by two notes, each for $500, and secured by a mortgage on the mill.  The original contract was dated July 3, 1914, and by its terms was to last for one year from that date.

In the fall of 1914 the shingle market became unsettled, and appellee became anxious for appellant to discontinue the manufacture of shingles, and announced its inability and unwillingness to finance appellant's operations.  It is said that this action constituted a breach of the contract and entitled appellant to recover as damages on his counterclaim the loss of profits he sustained during the time his mill was shut down for the lack of timber to manufacture into shingles.  The briefs discuss this ques-

tion, but we do not stop to consider it, as we dispose of the case on another proposition.

Appellee furnished appellant $433 with which to buy logs, but refused to furnish any more money for that purpose, but offered to indorse appellant's paper at a bank if he could raise money in that way. About this time the bank requested that additional security for appellant's notes be given, and appellee indorsed the notes and finally paid them and took an assignment of the mortgage securing them, and this is the mortgage here sought to be foreclosed.

On December 18, 1914, the parties entered into the following supplemental agreement:

"This is to be an agreement between Otto Marker and East Arkansas Lumber Company in connection with a former shingle contract. It is agreed that the said Marker close his mill or shut down until April 1, 1915, at which time he may resume operation. Should it be agreeable to both parties, the mill may resume operations before this date. Three months' time shall be added to the original shingle contract on account of this shut down, unless it is mutually agreed to resume operations earlier than April 1st, in which event such time shall be added to the contract as the mill has been shut down during this agreement."

On March 31st, another agreement was made for appellant to shut down his mill for another month and to have an additional month added to the time of his original contract.

Appellant testified that, under the terms of his original contract in which appellee had agreed to furnish the money to buy timber, he had expected to accumulate, during the summer and fall, the timber necessary to operate the mill, which could not be hauled during the months of January, February, March and April, and that because of the lack of this timber he was not able to operate his mill to its full capacity after the month of September, and that he thereby sustained a loss of profits which he would otherwise have made.

We pretermit a discussion of this question because we think the testimony warranted the finding made by the court below "that any breach of contract on the part of plaintiff (appellee) was waived by defendant's (appellant's) agreement to suspend on December 18, 1914." The agreement to shut down the mill covered the period of time during which appellant says the profits would have been earned, and it must necessarily follow that there could be no liability for profits which might have been earned during the period of time when it was agreed that the mill should not be operated at all. It may be true, as appellant contends, that he was practically compelled to execute the agreement of December 18th, because of appellee's failure to make advances of money; but it cannot be said that the agreement was without consideration, nor that it was void as not having been voluntarily made. Appellant did not stand on his right to have advances made him. He was told that additional advances could not be made after the $433 were advanced on September 1, 1914. He was told, however, that appellee would indorse for him if he could raise money in this way, and appellee's manager testified that he indorsed appellant's notes above mentioned for his company as an advancement. This was a sufficient consideration to support the agreement of December 18th.

Appellant's mill yard was overflowed during August, 1915, and he claims to have expended the sum of $200 in caring for shingles held on his yard at the risk of appellee, and also to have lost shingles of the value of $90.50, with which appellee should be charged. The court below found that appellant was not entitled to either of these credits, and therefore refused to allow them. The testimony does show that appellant was put to considerable expense on account of this overflow; but this expense appears to have been as necessary for the preservation of appellant's own property as for that of appellee. No claim was made on this account during all the correspondence of the parties in their attempts to adjust their differences, and the claim was not made at all until the dep-

ositions were being taken for the trial of the cause; and we cannot say that the action of the court in disallowing this item is clearly against the preponderance of the evidence.

In regard to the lost shingles, however, we do think the chancellor's finding is against the preponderance of the evidence. The evidence shows that shingles of this value were lost, and that they had been on appellant's yard for a period of more than four months and that under the contract any loss of shingles which had been on the yard for more than four months should be sustained by appellee. This credit of $90.50 will therefore be allowed, and the judgment in appellee's favor reduced to that extent. In other respects the decree is affirmed.