CLEAR CREEK OIL & GAS COMPANY *v*. BRUNK.

Opinion delivered November 5, 1923.

1. CONTRACTS—FORFEITURE—WAIVER.—One party to a contract who, with knowledge of a breach by the other party, continues to accept benefits under the contract and suffers the other party to continue in performance thereof, waives the right to insist on a breach.

2. MINES AND MINERALS—WAIVERS OF BREACH OF LEASE AGREEMENT. —Where the lessor in an oil and gas lease accepts rentals from his lessee after knowledge of a breach of agreement to drill

a well, instead of declaring a forfeiture and suing for damages, he will be held to have waived the breach and the consequent damages therefrom.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; reversed and affirmed.

*E. L. Matlock* and *Hill & Fitzhugh,* for appellant.

1. Appellant was not liable to suit in Crawford County. Its articles of incorporation name Fort Smith as its domicile; there it has at all times maintained its principal office, and its chief officer does not reside in Crawford County. Moreover, the summons was directed to the sheriff of Sebastian County, and was there served. This is not an injury to real estate within the 4th paragraph of C. & M. Digest, § 1164. 95 Ark. 421; 232 S. W. 858; 26 L. R. A. (N. S.) 940, note. The action is transitory. C. & M. Dig, § 1176; see *Id.,* § 1171; 77 Ark. 412; 61 S. E. 202; 69 Ark. 429; *Id.* 396; 84 Ark. 573; 14-A, Corpus Juris, 800, § 2899 and cases cited in notes; 106 Ark. 552; 14 Corpus Juris, 338, § 416 and notes; 59 Ark. 593.

2. The protection well was waived. See authorities cited in the *Bushmiaer* case, No. 7853.

3. The action is barred by limitation. 157 Ark. 446, and cases cited in *Bushmiaer* brief.

4. There is no duty resting on the lessee to drill a protection well for oil and gas, unless the same may be extracted with benefit or profit to both the lessor and lessee. 140 Fed. 801; 177 Pac. 104.

*J. E. London,* for appellees.

1. Appellant appeared and answered, thereby accepting and choosing the forum in which to interpose its defense. It is bound by that choice. 77 Ark. 497; 95 Ark. 302; 56 Ark. 45. Oil and gas is a part of the realty and is governed by the statute directing where jurisdiction of actions affecting real estate or any interest therein shall be brought. 204 Fed. 955; 97 Am. St. Rep. 1027; 28 *Id.* 790; 75 *Id.* 695; 45 W. Va. 27; Bryan on Petroleum and Gas, 174; 25 Atl. 732; 51 W. Va. 583.

2. There was no waiver of the protection well. 148 Ark. 301; 130 S. W. 286; 48 Tex. Civ. App. 555; 107 S. W. 609; 87 N. E. 381; 35 Atl. 109; 125 Pac. 81; 48 N. E. 502; 49 N. E. 399; 126 Fed. 630; Thornton on Oil and Gas, 3d ed., 109, par. 882.

3. Under the implied covenant contained in the lease the appellant was under the duty, within a reasonable time after drilling a producing well on adjacent property, to drill offset wells on the leased property to protect the gas under appellees' land. 148 Ark. 301.

4. The amount of damages which the plaintiff should recover was a question for the jury under the evidence, and not for the court. Art. 7, § 23, Const. Ark.; 37 Ark. 164; Id. 580; 35 Ark. 146; 33 Ark. 350; 49 Ark. 439; 58 Ark. 108.

McCulloch, C. J. There are two cases involved in this appeal—one instituted by appellee N. H. Brunk for himself, and the other by N. H. Brunk as guardian of Charles Brunk, a person of unsound mind—both against appellant Clear Creek Oil & Gas Company, a domestic corporation, and both actions are based on alleged breaches of lease contracts for the production of oil and gas. The cases were consolidated and tried together. There was a verdict for the recovery of damages by N. H. Brunk in his individual suit, but the court directed a verdict against the plaintiff in the Charles Brunk case, and an appeal has been prosecuted from the judgment in that case.

The lease in each of the cases covered forty acres of land, and the contract in each instance was, in form and substance, the same, except as to the amount of annual rentals to be paid by the lessee during the periods of delay in drilling on the leased lands. In the N. H. Brunk lease it was provided that the annual rental should be $15, which was subsequently increased to forty dollars by oral agreement. In the Charles Brunk lease it was provided that two hundred dollars should be the amount of the annual rental. The contracts were made

in January, 1916; they were in customary form and provided, in substance, for a consideration of one dollar, paid in cash, and the agreement to drill for gas and oil; that the lease should run for a term of ten years, and as long thereafter as oil or gas should be produced; that, in the event a gas well or wells should be brought in, the lessee should pay to the lessor the stipulated sum per annum for each well from which gas was marketed; that if no well should be drilled for one year after the date of the lease within two and a half miles of the premises, all rights of the lessee should cease, unless the lessee should elect to continue the lease by paying tne stipulated annual rentals; and that the lessee should have the right at any time to surrender and terminate the lease by giving written notice to the lessor.

Appellant, Clear Creek Oil & Gas Company, had been operating in the Kibler field, in Crawford County, where the leased lands in controversy were situated, and brought in a gas well during the year 1915.

After the execution of the contracts involved in these controversies, appellant drilled for gas and brought in several wells on adjoining lands in close proximity to the lands herein involved, and the evidence tends to show that those wells drained gas from beneath the land of each of the plaintiffs. No drilling operations have been conducted by appellant on the lands of either of the plaintiffs, though demand was made on appellant that the same be done. According to the undisputed evidence, appellant paid the annual rentals regularly for three years after the wells on the adjoining lands were brought in and until the leases were canceled and surrendered by the lessee under the terms of the contract. Appellee N. H. Brunk testified that when he made demand on appellant the first time in 1916 for the drilling of protection wells on the leased lands, appellant's representative assured him that "he would get to him pretty soon" and offered to increase the rental to thirty-five dollars "until he could drill a well," and that

he accepted the rental each year thereafter until the lease was surrendered by appellant. Undisputed evidence adduced by appellant showed that the rent was increased to forty dollars for each year and that it was paid and accepted until the surrender of the lease. The present actions for damages are based on the failure of appellant to drill wells on the leased land to prevent drainage of gas through the wells on adjoining land.

In *Blair* v. *Clear Creek Oil & Gas Co.,* 148 Ark. 301, we decided that, under a contract similar to the ones now in suit for the development of gas, when the lessee drills wells on adjoining lands which drain the leased lands, it constitutes a breach of the contract on the part of the lessee to fail to drill protection wells on the leased lands to prevent drainage, and that there is an implied covenant on the part of the lessee to thus protect the premises. We also held that the acceptance of stipulated rentals for delay did not preclude the lessor from declaring a forfeiture or suing for damages on account of failure of the lessee to drill protection wells during the period of delay for which rent was paid and accepted. Very clear reasons were given in the opinion in that case why such an implied contract arose and why the acceptance of rent in advance for delay should not preclude the lessor from claiming a forfeiture. But in that case rental payments subsequently due were not accepted, and the forfeiture was claimed immediately, without any further dealings between the parties other than a demand, or demands, for performance of the implied covenant to protect the leased land by drilling offset wells. In the present case we have a different situation. The lessor repeatedly accepted payments of rentals for delay after the alleged breach of the implied covenant. In fact, according to the admissions of one of the lessors, he also accepted an increase of the annual rental on account of delay after the demand was made for a protection well. The lessor never declared a forfeiture, but, on the contrary, he continued to accept rentals during the remain-

ing period of the contract until it was surrendered by the lessee. Did this constitute a waiver of the alleged breach and the right to sue for damages? The principle is elemental that one party to a contract who, with knowledge of a breach by the other party, continues to accept benefits under the contract and suffers the other party to continue in performance thereof, waives the right to insist on the breach. *Friar* v. *Baldridge*, 91 Ark. 133; *Grayson-McLeod Lbr. Co.* v. *Slack*, 102 Ark. 79; *Bennett Lbr. Co.* v. *Walnut Lake Cypress Co.*, 105 Ark. 421; *Marker* v. *East Arkansas Lbr. Co.*, 135 Ark. 435; 6 R. C. L. 1022. That principle applies here in bar of the right of the lessor to recover damages on account of alleged breach of the contract. The very reasons given by the court in the Blair case why the advance acceptance of rentals did not preclude the party from declaring a forfeiture for the breach which occurred during that period lead to the conclusion that subsequent acceptance of rentals paid for delay do constitute a waiver of such forfeiture. When a party accepts rentals with full knowledge of the breach, he impliedly consents to further delay, notwithstanding the breach, and cannot thereafter claim a forfeiture or sue for damages on account of the delay. In the Blair case it was pointed out that a mere declaration of forfeiture for breach of the implied covenant might not afford adequate relief to the lessor, and that he should also be permitted to recover for damages for such loss by drainage as might occur until he could have reasonable opportunity to protect his land. So it follows from that holding that if the lessor, instead of declaring a forfeiture and suing for damages, consents to further delay and accepts compensation for the delay, he thereby waives the breach and consequent injury resulting therefrom.

Our conclusion therefore is that the undisputed evidence shows that there is no right of action for the recovery of damages in either of these cases, so the

judgment in the Charles Brunk case is affirmed; and, as the evidence has been fully developed in the N. H. Brunk case, the judgment in that case will be reversed, and judgment will be entered here in favor of appellant.