Carson *v.* Ozark Natural Gas Company.

4-3919

Opinion delivered June 24, 1935.

*Roy Gean,* for appellants.

*Miles, Armstrong & Young,* for appellees.

Smith, J. On August 25, 1928, appellant entered into an oil and gas lease with the Lavaca Oil & Gas Company which was soon thereafter assigned to appellee. The lease covered a tract of thirty-one acres and its provisions, material to this litigation, are as follows. For the consideration of $15 the right was granted ''of mining and operating for oil and gas and laying pipe lines,'' etc. This lease was to remain in force for a term of ten years, and as long as oil or gas or either was produced from the leased land.

As a consideration the lessee agreed, ''to pay the lessor two hundred dollars each year in advance, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said

land during the same time by making his own connections with the wells at his own risk and expense.''

It was provided in the lease that, if no well was commenced on or before August 25, 1929, the lease should terminate as to both parties, unless the lessee on or before that date should pay or tender to the lessor at the City National Bank of Fort Smith the sum of 50 cents per acre, ''which sum shall operate as a rental and cover the privilege of deferring a commencement of a well for twelve months from said date. * * * In like manner and upon like payments or tenders the commencement of a well may be further deferred for a like period of the same number of months successively.''

Appellees owned gas leases adjoining appellant's land on all sides, and in 1929-1930 drilled producing wells on the four sides of appellant's land all of which were within a quarter of a mile of it. Appellant requested appellee to drill upon his land in 1930 and renewed the demand in 1931. The $15 rental was paid and accepted in 1930, and this rental was also paid in 1931 with an additional payment of $70 for that year, this being paid upon the agreement that appellant would not demand that a well be drilled in 1931.

Appellant testified that appellees' manager promised to do something about the well in 1932, but did not drill the well. A few days before the anniversary date of the lease in 1932, appellee deposited $15 to the credit of appellant with the depository named in the lease. When advised that the deposit had been made, appellant returned it and made formal demand that appellee drill an off-set well on his land. A formal letter of demand was addressed to appellee under date of August 25, 1932, and upon the same date appellee executed a release of the oil and gas lease. This release was filed and recorded September 3, 1932, but appellant testified that the release was not sent him, and that he knew nothing of it at the time, and that he was only told by appellee that the lease had been canceled.

Appellant testified that this field had been producing gas for many years, and that the wells were placed approximately one for each forty-acre tract of land ex-

cept that there is no well on his 31-acre tract. A geologist testified that one or more and probably all the adjacent wells were drawing gas from appellant's land.

This suit was brought by appellant to recover damages for the failure to drill on his land, and from a verdict against him, which was directed by the court, is this appeal.

The action of the court in directing a verdict against appellant is defended upon the authority of the case of *Clear Creek Oil & Gas Company* v. *Brunk,* 160 Ark. 574, 255 S. W. 7. The opinion in that case reaffirmed the holding in the case of *Blair* v. *Clear Creek Gas & Oil Company,* 148 Ark. 301, 230 S. W. 286, where it was decided that, when a lessee drills wells on adjoining lands which drain the leased land, it constitutes a breach of the contract on the part of the lessee to fail to drill protection wells on the leased land to prevent drainage, and that there is an implied covenant on the part of the lessee to thus protect the premises. It was held in the Brunk case, *supra,* to quote a headnote: "Where the lessor in an oil and gas lease accepts rentals from his lessee after knowledge of a breach of agreement to drill a well instead of declaring a forfeiture and suing for damages, he will be held to have waived the breach and the consequent damages therefrom."

It is insisted that when appellant definitely refused to continue to receive the annual rental, and threatened to sue for the breach of the implied covenant to protect his land by drilling a well as demanded, appellee then canceled the lease and surrendered the premises, and it was evidently upon this theory that the verdict was directed in appellee's favor.

It is true, of course, that appellant, having accepted the annual rental up to August 25, 1932, cannot sue for any damages accruing prior to that time. The Brunk case, *supra,* so expressly decided. The rent was paid as the contract provides for the purpose of deferring for a year the obligation to drill the well. It is true also that appellee has the right to cancel this lease. Indeed it cancels itself when the lessee fails to drill or to pay the

rent which postpones the obligation to drill and surrenders the property.

Now, if it were true in fact that appellee had paid the rent up to August 25, 1932, at which time the lease was canceled, and the lease properly surrendered, there could be no recovery of damages. Appellee's rights under the lease would have expired, and the obligations incident to the lease would have terminated. But such is not the case. As has been stated, the lease gave the lessee the right not only to explore for oil and gas, but to lay pipe lines, and this right was exercised. Appellant testified, and it is not denied, that pipe lines were laid across the north side of his land, and they are now in use. This was a right conferred by the lease contract. In other words, appellee, without paying the annual rental, continued to enjoy all the rights which that payment, if accepted, would confer. It continues to drain the gas under appellant's land according to the geologist, and uses a pipe line across appellant's land in furtherance of that purpose, and is continuing to do so. The release must therefore be treated as the declaration of an unexecuted intention—that of canceling the lease and surrendering possession.

Appellee has not therefore canceled this lease and surrendered possession as it might have done. The case made is that of a lessee who retained possession after August 25, 1932, without paying rent, and it must therefore respond in damages. How are these damages to be measured?

Appellant's counsel conceded in the oral argument that a single well would have sufficed under the requirements of the lease, and this concession appears to be well made. The undisputed testimony, appellant's own testimony, is to the effect that throughout this old and developed field there has been drilled, and is in operation about one well for every forty acres of land. Appellant's tract consists of 31 acres. The geologist testified that gas was being produced on all sides of this small tract of land, and would, no doubt, be found under it if a well were drilled. Now, the contract required the lessee to pay $200 each year for any well where gas only

is found, and this rental is much less than the cost of drilling .a well. This rental value of a single well appears to be the fair and proper measure of the damages to be recovered, and, as that basis is to be adopted, appellant would be also entitled to recover the value of the gas which he was entitled to have for his domestic use less the cost of making connections.

The judgment will therefore be reversed, and the cause remanded, with directions to award judgment for the rental value of a single well from August 25, 1932, until the possession of the leased property is surrendered, and also the value of the domestic gas less what the cost of connections would have been.