SOUTHERN PIPE COATING, INC. *v.* SPEAR & WOOD MFG. CO.

5-2880                                      363 S. W. 2d 912

Opinion delivered January 21, 1963.

*Nance & Nance,* for appellant.

*Hale & Fogleman,* for appellee.

ED. F. McFADDIN, Associate Justice. The only point urged on this appeal is that the Trial Court committed reversible error in refusing to direct a verdict for the appellant; so in testing the ruling of the Trial Court we view the evidence in the light most favorable to the appellee, as is our rule. *Ark. P. & L. Co.* v. *Connelly,* 185 Ark. 693, 49 S. W. 2d 387; *Life & Cas. Ins. Co.* v. *Kinney,* 206 Ark. 804, 177 S. W. 2d 768; *Mo. Pac. Ry. Co.* v. *Hopper,* 208 Ark. 128, 185 S. W. 2d 88.

Appellant, Southern Pipe Coating, Inc., is a corporation engaged in the business of coating pipe. Appellee, Spear & Wood Manufacturing Company, is a corporation engaged in manufacturing and selling pipe. In January 1959 appellee obtained a contract to sell pipe in Greenwood, Mississippi, provided the pipe was coated to comply with the specifications of the American Water Works Association, herein referred to as "AWWA Specifications." Appellant agreed to coat the pipe for appellee in accordance with such specifications; and it is this contract and the work of the appellant thereunder that gives rise to the present litigation.

The appellant, by letter of February 3, 1959, addressed to appellee, proposed a certain price for "coating and wrapping the following pipe according to AWWA Specifications, the interior to be spun lined; the exterior to be coated and wrapped with 15 pound felt with a whitewash and to be cut back approximately 9 inches from the ends. The pipe is to be sand blasted by you, to be done on your premises in West Memphis, Arkansas, available space is to be provided by you, as well as machinery and handling to be furnished by you."[1] The said offer was accepted by the appellee by purchase order, and the appellant undertook to perform the contract. All parties understood the AWWA Specifications, which were that the thickness of the enamel to be applied should be 3/32 inches thick, plus or minus 1/32 inches tolerance.

There appear to be several methods whereby pipe may be coated with enamel: either the "Weir Method,"[2] the "Trough Method,"[3] or the "Dam Method."[4] The appellant, Southern Pipe Coating, Inc., was free to use any method it desired to accomplish the coating of the pipe to the required specifications. Southern Pipe Coating, Inc. had previously sold to Spear & Wood a trough which could be used in applying the enamel through the trough method; and without so informing Spear & Wood, the appellant intended to use the trough that had been sold to Spear & Wood. But when appellant's workmen reached the premises of Spear & Wood, they found that the said trough had been damaged. Without insisting on the repairing of the trough, the furnishing of another

[1] There were two of these proposals and two purchase orders; but the contract, as shown by the said proposal and purchase order, was the same in both instances.

[2] In the "Weir Method" applying the enamel is accomplished by inserting in the pipe a device, with a nozzle attached to the end, and spraying the enamel onto the pipe while withdrawing the nozzle.

[3] In the "Trough Method," a vee or semi-circle trough is inserted in the pipe; enamel is poured into the trough; and the pipe is rotated. As the pipe turns, the trough is inverted, pouring the enamel onto the pipe, and centrifugal force spreads the enamel over the interior surface of the pipe.

[4] In the "Dam Method," a rubber hose is placed in the ends of the pipe to make a dam, and the enamel is then poured into the pipe. There is some testimony that the "dam method" will not comply with the AWWA Specifications.

trough, or any other equipment to be furnished by appellee, the appellant undertook to coat the pipe by what is called the "dam method."

When appellant had completed the coating, the pipe was shipped to Greenwood for its designated use, and was rejected by the engineer and the contractor because the pipe was not properly coated according to AWWA specifications. Appellee called on appellant to correct the defects in the coating, and there is some controversy between the parties as to what occurred; but there is substantial evidence that the appellant refused to repair the incorrect coating except on a new condition, that is, "machinery and equipment necessary to control thickness of application to be furnished by you." Appellee took the position that appellant should perform the original contract without requiring appellee to furnish any new equipment at such late date. When appellant refused, appellee had the pipe satisfactorily recoated by another company; and then filed this suit for damages, which the jury awarded. From that judgment there is this appeal.

So much for the facts. As heretofore stated, appellant insists that it was entitled to an instructed verdict because the appellee had failed to furnish machinery in accordance with the original contract of February 3, 1959. We have heretofore stated the language of that contract: it said, "available space is to be provided by you,[5] as well as *machinery*,[6] and handling to be furnished by you." Appellant insists that appellee did not furnish the trough (*i.e.,* machinery) that appellant expected; that it was the failure to furnish such trough that brought about the defective coating; and that because a good trough was not furnished originally, then appellee committed the first breach of the contract, and cannot pursue appellant.

We do not agree with appellant's contention that it was entitled to an instructed verdict. Under the evidence, waiver was a question of fact for the jury. We

---

[5] That is, by Spear & Wood.
[6] Emphasis our own.

have a number of cases which hold that one side may waive a breach of the contract by the other side and then be liable for its own subsequent breach of the contract. Some of these cases are: *Truemper* v. *Thane Lbr. Co.*, 154 Ark. 425, 242 S. W. 823; *Grayling Lbr. Co.* v. *Hemingway*, 128 Ark. 535, 194 S. W. 508; *Wolff* v. *Alexander Film Co.*, 186 Ark. 848, 56 S. W. 2d 424; and *Clear Creek Oil Co.* v. *Brunk,* 160 Ark. 574, 255 S. W. 7. In the last cited case, Chief Justice McCulloch used this language:

"The principle is elemental, that one party to a contract who, with knowledge of a breach by the other party, continues to accept benefits under the contract and suffers the other party to continue in performance thereof, waives the right to insist on the breach. *Friar* v. *Baldridge,* 91 Ark. 133; *Grayson-McLeod Lbr. Co.* v. *Slack,* 102 Ark. 79; *Bennett Lbr. Co.* v. *Walnut Lake Cypress Co.,* 105 Ark. 421; *Marker* v. *East Arkansas Lumber Co.,* 135 Ark. 435; 6 R. C. L. 1022."

In *Bennett Lumber Co.* v. *Walnut Lake Cypress Co.,* *supra,* Mr. Justice HART, in summarizing the evidence of waiver of the first breach in that case, said: "Thus it will be seen that Ladd acted with the full knowledge of all the facts and circumstances connected with the alleged breaches of the contract, and will be deemed to have waived them." To the same effect as our own cases, see generally 12 Am. Jur. 919 *et seq.,* "Contracts" § 354; and 17 C. J. S. 992 *et seq.,* "Contracts" § 491 and § 493.

Even if we assume that the appellant, in February 1959, could have claimed a breach of the contract to have been committed by the appellee (for failure to furnish a usable trough), nevertheless it was a question for the jury as to whether the appellant *waived* such breach by undertaking the performance of the contract after knowledge of such breach. With a jury question made, it follows that the Trial Court was correct in denying appellant's request for an instructed verdict.

Affirmed.