# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-1054

———————

All-Ways Logistics, Inc.,         *
                                  *

         Appellee,           *

                                  *   Appeal from the United States
     v.                       *   District Court for the
                                  *   Eastern District of Arkansas.

USA Truck, Inc.; USA Logistics,  *

                                  *

         Appellants.       *

———————

Submitted:  September 25, 2008
Filed:  October 1, 2009

———————

Before MURPHY, BOWMAN, and BENTON, Circuit Judges.

———————

BOWMAN, Circuit Judge.

This breach-of-contract case arises out of a commission agreement entered into by All-Ways Logistics, Inc., and USA Truck, Inc.  Following a jury trial, the District Court[1] awarded All-Ways approximately $3 million on its breach-of-contract claims, as well as prejudgment interest and attorney fees.  USA Truck appeals, arguing that the District Court erred by (1) failing to instruct the jury on an affirmative defense, (2) awarding prejudgment interest, and (3) awarding an unreasonable amount of attorney fees.  We affirm.

———————

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

## I.

All-Ways works as an independent agent for freight carriers, soliciting loads of freight from shippers and then tendering the loads to carriers for transport. USA Truck is a freight carrier. All-Ways and USA Truck entered into a commission agreement in 1999. Under the agreement, USA Truck was to pay All-Ways a five percent commission on freight that All-Ways solicited and USA Truck transported. All-Ways brought several shipping accounts (or books of business) to USA Truck, the largest of which were Rheem Manufacturing Co. and W.W. Grainger, Inc. The parties operated under the commission agreement without incident for more than two years. Then in March 2002, USA Truck informed All-Ways that All-Ways's services were no longer needed—and that commissions would no longer be paid—on the Rheem account. USA Logistics, a logistics division of USA Truck, had begun contracting directly with Rheem to arrange for USA Truck to meet Rheem's transportation needs. USA Truck continued to transport Rheem's freight but stopped paying All-Ways a commission on that freight. All-Ways repeatedly complained to USA Truck about USA Truck's actions on the Rheem account. The parties continued to operate under the commission agreement for other shipping accounts. In the fall of 2004, USA Truck began negotiating an arrangement with Grainger whereby Grainger would bypass All-Ways as a shipping agent and deal directly with USA Truck. In August 2005, USA Truck notified All-Ways that USA Truck was canceling the commission agreement. Under the cancellation clause in the agreement, the cancellation became effective on October 6, 2005.

In May 2006, All-Ways filed suit against USA Truck and USA Logistics, alleging violations of Arkansas contract law.[2] All-Ways asserted that under the terms

---

[2]In its complaint, All-Ways makes no distinction between USA Truck and USA Logistics in All-Ways's allegations of wrongdoing. Nor do the parties distinguish between USA Truck and USA Logistics in their briefs; they simply refer to "USA." Thus, the Court's references to "USA Truck" in the remainder of this opinion generally should be read to include USA Logistics.

of the commission agreement, USA Truck owed All-Ways a commission on freight that USA Truck transported through October 6, 2005, for the Rheem account, the Grainger account, and the other accounts solicited by All-Ways. At trial, at the conclusion of the evidence but before submission to the jury, the District Court entered judgment for All-Ways on its breach-of-contract claim for the Grainger account and awarded damages in the amount of $40,268. The jury then returned a verdict for All-Ways on its breach-of-contract claim for the Rheem account and awarded damages in the amount of $2,966,880. USA Truck filed a number of post-trial motions, which the District Court denied. The District Court awarded All-Ways about $583,000 in prejudgment interest, $18,000 in costs, and $1 million in attorney fees.

On appeal, USA Truck contends that the District Court abused its discretion by (1) failing to instruct the jury on the affirmative defense of waiver of breach by acceptance of benefits, as it applied to the Rheem account, (2) awarding prejudgment interest to All-Ways because the commission amount was unliquidated and speculative, and (3) awarding attorney fees of more than $1 million based, in part, on a contingent-fee arrangement.

## II.

USA Truck's first argument is that the District Court erred when it refused USA Truck's proffered jury instruction on the affirmative defense of waiver of breach by acceptance of benefits. USA Truck's theory of defense was that All-Ways waived USA Truck's breach of the commission agreement as to the Rheem account by continuing to accept commission payments for shipments made on other accounts. The District Court concluded that the facts of this case did not support USA Truck's theory and declined to instruct the jury on waiver.

We review alleged errors in the jury instructions given by a district court for abuse of discretion. Brown v. Sandals Resorts Int'l, 284 F.3d 949, 953 (8th Cir.

2002). In our review, "we ask whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1061 (8th Cir. 2005) (internal quotation marks and citation omitted). A district court must instruct the jury on a party's legal theories if the theories are legally sound and supported by the evidence. See id. "We will sustain the district court's decision not to give an instruction if the instruction is unsupported by the evidence." Id. In diversity cases such as this one, "the substance of the jury instructions must fairly and adequately represent the law of the forum state." Brown, 284 F.3d at 953; see also Moses.com, 406 F.3d at 1061.

USA Truck proffered the following instruction based on Arkansas Model Jury Instruction (AMI) 2437:[3]

> DEFENSE—WAIVER OF BREACH BY ACCEPTANCE OF BENEFITS
> USA contends that All-Ways waived any breach of their contract regarding non-payment of commissions on freight relating to the Rheem account and has the burden of proving two essential propositions:

---

[3]AMI 2437 reads:

DEFENSE—WAIVER OF BREACH BY ACCEPTANCE OF BENEFITS

> [Defendant] contends that [plaintiff] waived a breach of their contract and has the burden of proving two essential propositions:
> First, that [plaintiff] knew [defendant] had breached their contract; and
> Second, that [plaintiff] continued to accept benefits under the contract and allowed [defendant] to continue his/her performance of the contract.
> [If you find from the evidence in this case that both of these propositions have been proved, then your verdict should be for [defendant]].

-4-

First, that All-Ways knew USA had breached their contract regarding payment of commissions on Rheem freight; and

Second, that All-Ways continued to accept benefits in the form of commissions on other accounts under the contract and allowed USA to continue its performance of the Commission Agreement.

Appellants' Br. Add. at 41. USA Truck asserts that the giving of this instruction was supported by the fact that after USA Truck stopped paying commissions to All-Ways on the Rheem account in 2002, the parties still performed under the commission agreement for other accounts. USA Truck argues that by continuing to accept commission payments for other accounts, All-Ways accepted benefits under the agreement and any breach related to the Rheem account was waived.

The District Court refused to give the proposed instruction because the court determined that the affirmative defense of waiver of breach by acceptance of benefits did not fit the facts in this case. While the question is a close one, we cannot say that the District Court abused its discretion in holding that the waiver instruction did not apply.

The District Court noted that the benefits accepted by All-Ways following USA Truck's breach on the Rheem account were not connected to that breach. The court reasoned that each book of business that All-Ways turned over to USA Truck "gave rise to a separate and independent unilateral contract between the parties and that All-Ways'[s] performance as to one account did not entitle it to a commission on another, nor did USA's breach by nonpayment as to one account create a cause of action for breach as to the others." Postjudgment Order of Dec. 4, 2007, at 7. Essentially, the District Court determined that the commission agreement was a severable contract divided into separate parts via the separate books of business that All-Ways brought to USA Truck, see Ellison v. Tubb, 749 S.W.2d 650, 651 (Ark. 1988) (noting that a contract "is severable, when, in its nature and purpose, it is susceptible of divisions and apportionment, and has two or more parts in respect to

matters or things contemplated and embraced by the contract which are not necessarily dependent upon each other" (quoting 17 Am. Jur. 2d Contracts § 325 (1964))), and that the defense of waiver by acceptance of benefits did not apply where, following breach of one part, benefits were accepted as to another part.

USA Truck challenges the District Court's holding by arguing that whether the commission agreement was severable was a fact question that the court should have submitted to the jury. We recognize that in Ellison, the Supreme Court of Arkansas stated that severability is determined from the intention of the parties and that the intention of the parties was an issue of fact. 749 S.W.2d at 651. Significantly, however, the contract disputed in Ellison was an oral agreement; "[t]here was no written instrument to be construed." Id. It is a well-established tenet of Arkansas law that *written* contracts that are unambiguous are construed as a matter of law by the court. Jet Asphalt & Rock Co. v. Angelo Iafrate Constr., LLC, 431 F.3d 613, 616 (8th Cir. 2005); Artman v. Hoy, 257 S.W.3d 864, 869 (Ark. 2007); see also Oliver v. Oliver, 19 S.W.3d 630, 633 (Ark. Ct. App. 2000) ("When a contract is unambiguous, its construction is a question of law for the court, and the intent of the parties is not relevant."). Because we determine, as explained below, that the written commission agreement was unambiguous in its treatment of different accounts as separate, we find that the District Court did not abuse its discretion when it did not submit the question of severability to the jury.

"Under Arkansas law, the determination whether a contract is ambiguous is a question of law." Jet Asphalt, 431 F.3d at 616; see also Magic Touch Corp. v. Hicks, 260 S.W.3d 322, 326 (Ark. Ct. App. 2007). "A contract is unambiguous . . . when its terms are not susceptible to more than one equally reasonable construction." Turnbough v. Mammoth Spring Sch., 45 S.W.3d 430, 434 (Ark. Ct. App. 2001). In construing the commission agreement, we give words their "ordinary meaning," viewing the subject of the contract "as the mass of mankind would view it." Coleman v. Regions Bank, 216 S.W.3d 569, 574 (Ark. 2005). We have reviewed the agreement

and conclude that it is unambiguous in its treatment of commission payments for separate accounts solicited by All-Ways.[4]  The agreement clearly contemplates that multiple commission payments will be made, such that by its nature the contract is susceptible to division.  See Commission Agreement at ¶4 ("USA Truck will exercise good faith in deciding all questions concerning . . . the amount of *any* commission payable under this agreement." (emphasis added)); Ellison, 749 S.W.2d at 651 (ruling that contracts are severable when by their nature they are susceptible of divisions). While the commission agreement might be subject to different constructions, it is not subject to "equally reasonable ones."  Fryer v. Boyett, 978 S.W.2d 304, 306 (Ark. Ct. App. 1998).  We hold that the "more reasonable construction" of this contract is that it is divisible based on the separate shipping jobs secured by separate accounts.  Id.

Even if we were to find that the District Court erred in deeming the commission agreement severable as a matter of law, we would nonetheless affirm the District Court's finding that the waiver instruction did not apply based on an additional reason given by the court:  there can be no waiver when the injured party does not manifest an intent to waive the breach.  Arkansas law holds that the waiver of a breach must be voluntary, knowing, and intentional.  Bharodia v. Pledger, 11 S.W.3d 540, 545 (Ark. 2000); see also 13 Sarah Howard Jenkins, Corbin on Contracts § 67.12(1) (rev. ed. 2003) ("Without some statement or expression of an intent to discharge, merely proceeding with performance in spite of nonfulfillment of some condition precedent by the other party is not operative as a discharge of an existing right to damages for such nonfulfillment."); 23 Richard A. Lord, Williston on Contracts § 63:9 (4th ed. 2002) ("[T]he general rule is that where a contracting party, with knowledge of a

---

[4]The District Court deemed two sentences of the commission agreement ambiguous and submitted their interpretation to the jury.  See Jury Instr. No. 8 (involving the meaning of the clause "freight solicited by you and transported by USA Truck").  This does not affect our determination that the agreement was unambiguous as to the separate treatment of commission payments for each different shipping account.

breach by the other party, receives and accepts payment or other performance of the contract, he or she will be held to have waived the breach. . . . *However*, a party will not be deemed, as a matter of law, to have waived a breach, where it issues numerous warnings . . . ." (emphasis added)). As the District Court noted and the parties do not dispute, All-Ways immediately and repeatedly complained to USA Truck about USA Truck's failure to pay commissions on the Rheem account. There is no indication that All-Ways assented to the breach of the commission agreement as applied to the Rheem account.

USA Truck asserts that when a non-breaching party continues to accept benefits under a contract, Arkansas law does not require an additional, affirmative manifestation of waiver. To be sure, a number of cases recite the general rule that "one party to a contract who, with knowledge of a breach by the other party, continues to accept benefits under the contract, and suffers the other party to continue in performance thereof, waives the right to insist on the breach." S. Pipe Coating, Inc. v. Spear & Wood Mfg. Co., 363 S.W.2d 912, 914 (Ark. 1963) (quoting Clear Creek Oil & Gas Co. v. Brunk, 255 S.W. 7, 8 (Ark. 1923)); see also Grayson-McLeod Lumber Co. v. Slack-Kress Tie & Stave Co., 143 S.W. 581, 583 (Ark. 1912); Jet Asphalt, 431 F.3d at 617–18. But these cases do not control our analysis. First, none involves the acceptance of benefits under a different part of a severable contract—an important fact in this case. Even setting aside that fact, the cases cited by USA Truck are distinguishable because in all of them, following the breach, the non-breaching party made an affirmative indication that the breach was acceptable. See S. Pipe, 363 S.W.2d at 913 (the non-breaching party coated pipe even after discovering that the correct machinery was not supplied for the job); Clear Creek, 255 S.W. at 8 (the non-breaching party accepted additional compensation to account for the delay in promised services); Grayson-McLeod, 143 S.W. at 583 (the non-breaching party accepted payment for lumber cut on his land and sold to another and did not object to the breach); Jet Asphalt, 431 F.3d at 618 (the general contractor raised no objection to the sub-contractor's failure to give work to a minority enterprise specified in the

contract and led the sub-contractor to believe that the use of a different minority enterprise was agreeable). In contrast, as discussed above, All-Ways adamantly complained, on numerous occasions, to USA Truck about the cessation of commission payments on the Rheem account. See McCourt Mfg. Corp. v. Rycroft, No. 08-653, 2009 WL 1564463 (Ark. June 4, 2009) (finding no basis for waiver instruction where employee did not waive his right to unpaid commission by continuing to work for his employer). Given these circumstances, the District Court did not abuse its discretion in determining that the affirmative defense of waiver by acceptance of benefits did not apply in this case.

III.

USA Truck next challenges the District Court's award of prejudgment interest to All-Ways. USA Truck asserts that prejudgment interest may only be awarded when the amount of damages can be definitely ascertained at the time of the breach and argues that All-Ways was unable to calculate damages with exactness on that date. We review the District Court's award of prejudgment interest for abuse of discretion. See Ferrell v. W. Bend Mut. Ins. Co., 393 F.3d 786, 797 (8th Cir. 2005). In so doing, we recognize that prejudgment interest is a substantive matter governed by Arkansas law. See id.; Schwan's Sales Enters., Inc. v. Sig Pack, Inc., 476 F.3d 594, 595 (8th Cir. 2007).

The Supreme Court of Arkansas recently described the state's prejudgment interest standard as follows:

> Prejudgment interest is compensation for recoverable damages wrongfully withheld from *the time of the loss* until judgment. Prejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that makes it possible to compute the amount without reliance on opinion or discretion. This standard is met if a method exists

for fixing the exact value of a cause of action at the time of *the occurrence of the event that gives rise to the cause of action*.

Sims v. Moser, 284 S.W.3d 505, 519 (Ark. 2008) (emphasis added) (citations omitted).

The District Court determined that prejudgment interest could be calculated with certainty based on the rate of five percent set in the commission agreement and the revenues that USA Truck received on the Rheem account from March 2002 through the October 2005 cancellation of the agreement. Based on data that USA Truck provided in discovery, CPA Bruce Engstrom ascertained "the adjusted revenues received by USA, the dates they were received, and the commissions due each week throughout the contract period for which damages were sought and awarded." Postjudgment Order of Dec. 4, 2007, at 14. The District Court ruled, "There was, then, a method by which All-Ways'[s] damage could be calculated with certainty and without reliance on opinion or discretion." Id.

USA Truck argues that the District Court erred in awarding prejudgment interest because the amount of damages was not ascertainable with reasonable certainty in March 2002 when USA Truck told All-Ways that it was going to stop paying commissions on the Rheem freight. USA Truck asserts that although the commission agreement set out a rate of five percent, "All-Ways had no idea in March 2002 what the 5% would be multiplied against." Appellants' Br. at 44. USA Truck contends that the multiplier depended on how much freight USA Truck would haul for Rheem from that date until the cancellation of the agreement, a number that was unknown at the time of the breach.

We find no merit in USA Truck's argument. Under Sims, prejudgment interest must be awarded if a method exists for calculating the plaintiff's damages at the time of the loss, i.e., "the time of the occurrence of the event that gives rise to the cause of action." Sims, 284 S.W.3d at 519; see also id. ("[P]rejudgment interest is always

dependent upon the initial measure of damages being determinable immediately after the loss . . . ."). The occurrence of the event giving rise to All-Ways's breach of contract action on the Rheem account was USA Truck's refusal to pay the commissions when they became due. See Second Amended and Substituted Complaint at 3. Only then did All-Ways suffer a loss. On that date, the charge for the freight that USA Truck had actually hauled and for which a commission was due (what USA Truck calls the "multiplier") was known. Thus, "the initial measure of damages"—a five percent commission based on the volume of freight hauled—could be calculated with "reasonable certainty." Sims, 284 S.W.3d at 519; cf. Ciba-Geigy Corp. v. Alter, 834 S.W.2d 136, 148 (Ark. 1992) (affirming award of prejudgment interest where farmer's damages were not capable of exact determination until harvest, even though farmer knew of crop injury months earlier).

What of the fact, however, that All-Ways's damages accrued over a three-and-a-half-year period each time that USA Truck refused to pay commissions on Rheem freight that it hauled between March 2002 and October 2005? As USA Truck notes, the total amount of damages (the value of the cause of action) was not computable when the commission agreement was first breached in 2002. While this fact gives us pause, our research indicates that Arkansas courts award prejudgment interest in analogous situations. In Reynolds Health Care Services, Inc. v. HMNH, Inc., for example, the Supreme Court of Arkansas reversed a trial court's refusal to award prejudgment interest to the manager of a nursing facility who brought a successful breach-of-contract claim. 217 S.W.3d 797, 807 (Ark. 2005). Pursuant to a management agreement, the manager was to retain as a monthly management fee six percent of the gross revenues generated each month by the facility; gross revenues were defined as "all revenues generated by the facility less any Medicare or Medicaid adjustments." Id. As in the present case, the money owed under the breached contract (damages) accumulated over a period of time and varied each month. At trial, the Reynolds court heard testimony from an accountant who prepared a balance sheet showing the management fees owed after Medicare and Medicaid adjustments were

-11-

taken into account each month. Id. at 807–08. Based on the accountant's computation, the Arkansas Supreme Court accepted the manager's theory that "the precise amount it was owed was definitely ascertainable by mathematical computation from the moment [the owner of the nursing facility] incurred this obligation." Id. at 808. The trial court's refusal to award prejudgment interest was therefore deemed erroneous. Id.; see also Dugal Logging, Inc. v. Ark. Pulpwood Co., 988 S.W.2d 25, 31 (Ark. Ct. App. 1999) (affirming award of prejudgment interest where defendant's trespass and conversion of timber "occurred during a specified period of time and the amount of damages was capable of exact determination during that time"); All-Tech Mach. & Tool, Inc. v. Simmons Foods, Inc., No. CA06-1152, 2007 WL 1556285, at *4 (Ark. Ct. App. May 30, 2007) (upholding award of prejudgment interest in breach-of-contract action where defendant refused to pay plaintiff for work that plaintiff performed over a period of time); Deininger v. Baldwin, No. CA99-1333, 2000 WL 889759, at *2 (Ark. Ct. App. July 5, 2000) (holding that prejudgment interest should have been awarded in action to collect attorney fees that had accumulated over a ten-year period because "the determination of the amount of prejudgment interest, although involving numerous calculations, is possible without reliance on opinion or discretion"). Cf. Aon Risk Servs., Inc. v. Meadors, 267 S.W.3d 603, 616 (Ark. Ct. App. 2007) (holding that plaintiff insurance broker in breach-of-contract case was entitled to prejudgment interest because the breached contract set forth a specific percentage of insurance premiums that were to be placed in plaintiff's bonus pool and therefore a method existed by which plaintiff's damages could be computed using data obtained in discovery).

As in Reynolds, the District Court here relied on an expert to calculate prejudgment interest from multiple occurrences of "loss"—each time that payment was due under the agreement but not paid. CPA Engstrom stated that he calculated prejudgment interest from the dates that each commission payment should have been made by USA Truck—which, according to testimony at trial, was two weeks after

each shipment occurred—until the date of the entry of judgment.[5]  Postjudgment Order of Dec. 4, 2007, at 14.  Based on the Arkansas case law discussed above, it was not error to calculate damages and prejudgment interest from multiple loss dates.  The District Court's award of prejudgment interest was based on Engstrom's computation.  The amount of prejudgment interest was therefore calculable without reliance on opinion or discretion.  We find no abuse of discretion and affirm the award of prejudgment interest.

## IV.

USA Truck's final challenge is to the amount of attorney fees that the District Court awarded to All-Ways.  The District Court awarded fees under Arkansas Code Annotated section 16-22-308, a statute that permits an award of "reasonable" attorney fees to prevailing parties in contract cases.  The court found that the one-third contingency fee agreed to by All-Ways and its counsel was reasonable given "the contentious, time-consuming nature of this litigation, and based on this Court's familiarity with the record and quality of service rendered."  Postjudgment Order of Dec. 4, 2007, at 26.  Pursuant to the contingent-fee agreement, the court awarded All-Ways $1,002,383.  The District Court noted, however, that "should the Court of Appeals for the Eighth Circuit disapprove of a fee award based on the one-third contingency agreement," a reasonable fee calculated under the lodestar method is $217,014.  Id. at 27.  USA Truck argues that the award of $1,002,383 for attorney fees was unreasonable and asks us to vacate that award and replace it with the District Court's alternate award of $217,014.  We review the District Court's fee award for abuse of discretion, and we apply Arkansas law.  See Fuller v. Hartford Life Ins. Co., 281 F.3d 704, 708 (8th Cir. 2002).

---

[5]Because USA Truck's data file for the year 2003 was corrupted, Engstrom was only able to calculate interest from the last day of 2003 (rather than from two weeks after each shipment date throughout 2003) in computing the prejudgment interest owed All-Ways for shipments that occurred in that year.

In determining a reasonable amount of attorney fees under section 16-22-308, the District Court was required to consider

> the experience and ability of the attorney, the time and labor required to perform the legal service properly, the amount involved in the case and the results obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or contingent, the time limitations imposed upon the client or by the circumstances, and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

Chrisco v. Sun Indus., Inc., 800 S.W.2d 717, 718–19 (Ark. 1990). Our review of the record indicates that the District Court considered and discussed each of the Chrisco factors in reaching its decision. The District Court found, among other things, that "counsel for All-Ways is a very experienced and reputable attorney with superior legal skills," "[e]very aspect of this case was disputed and much time and energy required," "several million dollars in past and future commissions were at stake and judgment in excess of $3 million was entered in All-Ways'[s] favor," "the issues at stake were significant and aggressively litigated by USA against a factual background that was . . . difficult to piece together," "the time limitations imposed on All-Ways were significant," "counsel for All-Ways states . . . that for six months prior to trial he did little else but work on this case and was forced to turn away other work in the process," and "[c]ounsel for All-Ways took a substantial risk in accepting this case on a contingency basis." Postjudgment Order of Dec. 4, 2007, at 19–23.

USA Truck's primary argument against the fee award is that it is based on the contingent-fee agreement that All-Ways entered into with its counsel. As long as the trial court is guided by the relevant Chrisco factors, however, fee awards based in part on a contingency agreement are permissible under Arkansas law. Phelps v. U.S. Credit Life Ins. Co., 10 S.W.3d 854, 856–57 (Ark. 2000) (holding that trial court did

not abuse its discretion in awarding fees based on a contingency agreement rather than the total time that attorney spent on the case). The District Court recognized that "the fact that the agreed upon fee was a contingency fee does not automatically entitle the attorney to that amount under § 16-22-308." Postjudgment Order of Dec. 4, 2007, at 24. The court appropriately considered the contingent-fee arrangement as only one of the multiple Chrisco factors. See Home Mut. Fire Ins. Co. v. Jones, 977 S.W.2d 12, 18 (Ark. Ct. App. 1998) (upholding $36,600 award of attorney fees based on a forty percent contingent-fee contract, even where the lodestar method would have set fees at $18,000, because the trial judge "did not simply 'rubber stamp' the attorney-client fee agreement but offered reasons for holding that $36,600 was a proper fee").

USA Truck further challenges some of the District Court's findings under the other Chrisco factors. For example, USA Truck suggests that All-Ways's counsel spent too much time litigating the case, that the issues involved were not novel, and that All-Ways was awarded less than what it sought. However, "[b]ecause of its intimate acquaintance with the record and the quality of the service rendered, we recognize the superior perspective of the trial court in assessing the applicable factors." Phelps, 10 S.W.3d at 856. While the gap between the attorney fees awarded and the reasonable lodestar amount is great, nothing indicates that the District Court abused its discretion in setting the fees. We therefore affirm the District Court's award of attorney fees.

## V.
For the reasons discussed herein, we affirm the judgment of the District Court.

_____

-15-