# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2579
No. 23-2770

_____

Carroll Electric Cooperative Corporation

*Plaintiff - Appellant*

v.

Alltel Corporation

*Defendant - Appellee*

_____

Appeals from United States District Court
for the Western District of Arkansas - Harrison

_____

Submitted: April 9, 2024
Filed: October 3, 2024

_____

Before LOKEN, SHEPHERD, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 1983, Carroll Electric Corporation ("Carroll Electric"), an Arkansas rural electric distribution cooperative, entered into a lease agreement with the City of Berryville, Arkansas, and constructed a telecommunications tower on the leased property. In October 1994, Carroll Electric entered into a Tower Attachment Sublease Agreement ("the Sublease Agreement") that allowed Northwest Arkansas

RSA Limited Partnership ("Northwest Arkansas") "to install, maintain, operate and remove radio communications equipment and appurtenances on [Carroll Electric's] tower . . . and to construct a structure to house equipment." The five-year Sublease Agreement granted Northwest Arkansas the right to renew for three additional five-year terms. Northwest Arkansas renewed three times, through October 2014. The parties executed a Second Amendment to the Sublease Agreement on September 15, 2011, which provides in relevant part:

1. Commencing October 27, 2014 [when the third additional five-year term would expire], the Agreement shall automatically be extended for four (4) additional five (5) year terms unless [Northwest Arkansas] terminates it at the end of the then current term by giving [Carroll Electric] written notice of the intent to terminate at least six (6) months prior to the end of the then current term.

5. The Agreement and Second Amendment contain all agreements, promises or understandings between Sublessor and Sublessee . . . .

In 2015, with the Sublease Agreement again extended, Northwest Arkansas was dissolved by operation of law. Alltel Corporation ("Alltel") is now its successor-in-interest.[1] In April 2022, with the Sublease Agreement again extended, Alltel notified Carroll Electric that it was terminating the Agreement effective October 21, 2022. On February 2, 2023, Carroll Electric filed this breach of contract action in Arkansas state court, alleging wrongful termination. Alltel timely removed the case to the Western District of Arkansas, invoking the district court's diversity jurisdiction.[2] The district court[3] subsequently granted Alltel's motion to dismiss,

[1]Alltel's ultimate parent company is Verizon Communications, Inc., and Alltel sometimes does business as "Verizon Wireless." For clarity, we will refer to Alltel and its predecessors as Alltel.

[2]Carroll Electric is an Arkansas corporation with its principal place of business in Arkansas. Alltel is a Delaware corporation with its principal place of business in

-2-

concluding that the contract unambiguously gave Alltel the right to terminate. The court also granted Alltel's motion for a discretionary award of attorney's fees as the prevailing party in a breach-of-contract action. See Ark. Code Ann. § 16-22-308. Carroll Electric appeals both rulings. We review the grant of a motion to dismiss *de novo* and an award of attorney's fees for abuse of discretion. See All-Ways Logistics Inc. v. USA Truck, Inc., 583 F.3d 511, 520 (8th Cir. 2009) (attorney's fees). Applying Arkansas law, we affirm.

## I. The Motion to Dismiss

To prevail on its breach of contract claim under Arkansas law, Carroll Electric must prove that Alltel violated a contractual duty. See Smith v. Southern Farm Bureau Cas. Ins. Co., 18 F.4th 976, 980 (8th Cir. 2021). Over the course of their relationship, Northwest Arkansas and Carroll Electric executed five Amendments to the Sublease Agreement. Carroll Electric bases its breach of contract claim on Section 1 of the Second Amendment. In its motion to dismiss, Alltel argued there was no breach of contract when it terminated the Sublease Agreement in October 2022 because Section 8(c) of the initial Sublease Agreement provides:

> 8. **Termination.** Except as otherwise provided herein, this Sublease may be terminated, without any penalty or further liability . . . (c) By Sublessee or Sublessor for any reasons or no reason at all upon six (6) months advance written notice.

In response, Carroll Electric argued that termination two years before the end of "the then current term" in October 2024 breached the Sublease Agreement because

New Jersey. Carroll Electric's complaint alleged $118,000 in damages.

[3]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

Section 1 of the Second Amendment "only allowed unilateral termination at the end of a lease term with at least six months' notice."  At the hearing on Alltel's motion, both parties agreed that these two contractual provisions are unambiguous.  The issues are whether they conflict and, if so, which controls this dispute.

"When a contract is unambiguous, its construction is a question of law for the court."  Bank of Ozarks v. Jim Wood Co. Inc., 379 S.W.3d 548, 552 (Ark. App. 2010).  The district court concluded there is no conflict between Section 8(c) of the initial Sublease Agreement and Section 1 of the Second Amendment:

> Plaintiff counters that "the Second Amendment modified the language of paragraph 8(c) and is now the language that determines the right of the defendants to terminate the Sublease Agreement.". . .
>
> The Court finds that Section 8(c) of the Agreement is unambiguous . . . .  Likewise, the Second Amendment is unambiguous: the Agreement was extended for four additional lease terms, and the renewal of those terms was changed from opt-in renewal -- as in the original Agreement -- to opt-out renewal [i]f Defendant did not want the Agreement to renew for an additional term . . . .  The termination language in the Second Amendment refers only to whether the lease term is automatically extended at the end of the current term, and nothing in the plain text of the Second Amendment purports to alter how the parties may terminate the Agreement under Section 8(c).  The two provisions are unambiguous and do not conflict with one another.

Carroll Electric argues on appeal that "the termination clauses are not reconcilable and cannot be read in harmony because retaining the § 8(c) right to terminate for any cause renders the newly limited termination clause in the Second Amendment meaningless."  Because the Second Amendment came later, Carroll Electric argues, it controls.

-4-

It is well established that "[a] construction which neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions." Continental Cas. Co. v. Davidson, 463 S.W.2d 652, 655 (Ark. 1971). Here, we agree with the district court that the two provisions are not in conflict. They can -- and must -- be reconciled so that each is given effect. As the district court explained, Section 8(c) deals with contract termination; Section 1 of the Second Amendment deals with contract renewal. These are related but distinct contract terms. The clause in Section 1 of the Second Amendment on which Carroll Electric relies -- "unless Sublessee terminates . . . at the end of the then current term by giving Sublessor written notice . . . at least six (6) months prior to the end of the then current term" -- modified how the sublessee, now Alltel, can renew the Sublease Agreement for another five years. *If* neither party exercises its § 8(c) right to terminate earlier in the current term, Section 1 (an "opt out" provision) makes renewal automatic, whereas the original Agreement required the sublessee to "opt in" if it elected to renew. Giving effect to the plain meaning of each provision, they are not irreconcilable.

Carroll Electric urges us to focus on one specific clause in § 1 of the Second Amendment. But "[t]he object is to ascertain the intention of the parties, not from particular words or phrases, but from the entire context" of the Sublease Agreement. Blyme, Inc. v. Ivy, 241 S.W.3d 229, 236 (Ark. 2006) (quotation omitted). The district court's interpretation properly gave effect to all provisions of the unambiguous Sublease Agreement, including § 8(c). We agree the two provisions are reconcilable. Carroll Electric's complaint fails to state a plausible breach of contract claim. Cf. Rock Dental Ark. PLLC v. Cincinnati Ins. Co., 40 F.4th 868, 870 (8th Cir. 2022).

## II. The Motion for Attorney's Fees

After the district court granted the motion to dismiss, Alltel moved for attorney's fees and costs under Arkansas Code § 16-22-308, which provides that, in

an action for breach of contract, "the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs." Federal courts sitting in diversity apply state law when considering a motion for attorney's fees. All-Ways, 583 F.3d at 520. Alltel requested $19,795 in fees and $402 in costs. Carroll Electric opposed the motion, arguing the court should deny the motion and disputing Alltel's specific billings. The district court granted the motion. It awarded $402 in costs and $11,841.50 in attorney's fees, discounting both the number of hours and the hourly rates billed by Alltel's counsel.

In Chrisco v. Sun Industries Inc., the Supreme Court of Arkansas construed the word "may" in § 16-22-308 as "permissive and discretional" and identified factors to be considered in determining the amount of attorney's fees to be awarded:

> the experience and ability of the attorney, the time and labor required to perform the legal service properly, the amount involved in the case and the results obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or contingent, the time limitations imposed upon the client or by the circumstances, and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

800 S.W.2d 717, 718-19 (Ark. 1990), quoted in All-Ways, 583 F.3d at 520-21. "We usually recognize the superior perspective of the trial judge in assessing the applicable factors." Id. at 719.

In ruling on Alltel's motion, the district court found that Alltel was entitled to reasonable fees for the removed case and that Alltel's counsel performed well, but the case was "relatively straightforward" and counsel billed "somewhat more than was necessary." The court awarded roughly sixty-percent of the fee requested. On appeal, Carroll Electric argues that the court "should have exercised its discretion to

deny an award of attorney fees," arguing that Carroll Electric pursued its claim in good faith, paid its own litigation expenses, both parties are sophisticated and solvent, and the case was dismissed at an early stage.

We conclude the district court's award of attorney's fees was well within its substantial discretion. The court considered the Chrisco factors, highlighted salient facts, and substantially reduced the amount sought by Alltel based on reasonableness factors identified by Carroll Electric in opposition. As we affirm the district court's grant of Alltel's motion to dismiss, Alltel remains a prevailing party entitled to a discretionary award of its reasonable attorney's fees.

The judgment of the district court is affirmed.

_____